**Byron Lionel JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–92–00050–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 31, 1992.

Discretionary Review Refused
April 14, 1993.

Robert A. Monks, Galveston, for appellant.

Michael J. Guarino, Denise V. Wilkerson, Galveston, for appellee.

Before SAM BASS, COHEN and JONES, JJ.

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.

## OPINION

SAM BASS, Justice.

A jury convicted Jones of robbery, based on the law of parties. After finding two enhancement paragraphs true, the judge assessed punishment at 25–years confinement. We affirm.

█ In his first point of error, appellant asserts that the trial court erred in ruling, on appellant's *Batson* [1] challenge, that the State had sufficiently articulated adequate, race-neutral reasons for its use of its peremptory strikes. On appeal, the trial court's decision concerning an alleged *Batson* violation is reviewable only to determine whether it was clearly erroneous. *Hill v. State,* 827 S.W.2d 860, 865 (Tex. Crim.App.1992).

Appellant is black, and there were seven black venire members. The State exercised peremptory strikes on five; the remaining two served on the jury. The prosecutor stated the following reasons for striking those five black venire members.

█ Venire member number 12, Robert W. King, was struck because "I saw him sleeping. He was sitting there, and he was unresponsive.... He was like this [indicating].... I don't know if he was sleeping or not, but looked like it." In his brief, appellant agrees with the State's characterization, and concedes that the explanation is sufficient. Thus, there is no error in the striking of King.

█ Venire member number 11, Robert L. Sowell, was struck because:

His questions and answers that we had with him were the type that *I felt he was going to ask me to prove beyond a reasonable doubt;* or he just seemed to be so searching. He wanted to know the degrees. He wanted to—parties are more like a team aspect, and he did not like that. *He had already almost rejected the parties definition.*

(Emphasis added.) In his brief, appellant concedes Mr. Sowell "clearly had problems with the State's 'team' theory of [criminal responsibility]."

1712, 90 L.Ed.2d 69 (1986).

■ At least one commentator has observed that "it is often unwise to examine an individual jury prospect with any degree of vigor unless the attorney is prepared to challenge him peremptorily if no cause appears." 5 AM.JUR.TRIALS § 28 (1966). The prosecutor could certainly have accepted this formulation as a personal rule of trial strategy, and *Batson* would not require the prosecutor to press forward in an effort to establish an inability on the part of Mr. Sowell to be fair and impartial. The reason behind a peremptory strike does not have to rise to the level of a challenge for cause to be valid against a *Batson* challenge. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Even after *Batson*, a prosecutor retains the "historical privilege of peremptory challenge free of judicial control," *Batson*, 476 U.S. at 91, 106 S.Ct. at 1720, to the extent that "a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related *to his view* concerning the outcome' of the case to be tried[.]" *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719 (emphasis added). There was no error in the striking of Sowell.

■ Venire member number 10, Hazel J. Florence, was struck because

[T]he question I asked her, I felt she gave me an unresponsive answer. She seemed to be—although 62 is not that old, she didn't really seem to be listening real well when I was speaking. However, when [defense counsel] was speaking, she seemed to be really agreeing with him and shaking her head and following him much better. So, I felt ... she was following him, what he was saying, that she seemed to have difficulty with me. She was not responsive to my question.

Florence's demeanor and inferences from it were matters for the trial judge's discretion. The prosecutor was concerned that Ms. Florence was listening more closely to defense counsel—in other words, was not as "responsive" to the prosecutor's questioning at a personal level. We hold that the trial judge's implied finding that Ms. Florence was not purposefully struck on the basis of race was not clearly erroneous.

■ Venire member number 30, Roy J. Littles, was struck because

He did not fill in his jury information card; and other than, you know, asking him embarrassing questions, asking him why he didn't fill it out, what he was doing, and putting him on the spot, which I don't think would endear him to the State in anyway, Your Honor, ... we had no information on this sheet that we felt we could go forward on and select him as a juror.

The juror information forms are in the record. Mr. Little did not fill in blanks on the form for home and business phone number, employer, type of work, number of children, and religious preference. He answered questions stating he was single, 31 years old, and a lifelong resident of Galveston County, but he left more blanks than any other venire member. The prosecutor asked him no questions.

Counsel rely heavily on juror information forms, and careless or incomplete preparation of the form is an appropriate race-neutral factor for a prosecutor to consider. Thus, the prosecutor's concern about the many blanks on Littles' form is a legitimate explanation on its face.

■ Finally, venire member number 14, Percival Bryant, was struck because

[he's] starting school. I just ... didn't have any feelings to him. He was starting school. I didn't know what kind of school. He seemed to be undefinitive. His religious preference, he filled in half a word.... He's young. Several of the other jurors I did select had filled in their names, you know, with—they seemed to have, you know, more responsiveness. I could tell more from the jury information slip or from what they said in court.... Of the jurors, he was not one of the ones. You know, he just was a selection.

There were three characteristics that formed the basis for the prosecutor striking Mr. Bryant: (1) he filled in only half a word on his information form to indicate his religious preference; (2) he was "young"; and (3) she lacked information about him, and lacked a strong personal impression about what kind of juror he

would make and/or had an impression, based on his demeanor, that he would make a poor juror for the prosecution.

The record shows that persons with some of the same or similar characteristics as Mr. Bryant were not struck. Concerning religious preference, six other venire members left their religious preference completely blank. Of those individuals, only number one was struck by the State. Concerning age, Mr. Bryant was 23 years old. Two venire members—number 15, Ms. Gary, and number 16, Mr. Ewing—were not struck by the State, although they were 24 and 21 years of age, respectively. Appellant claims this disparate treatment shows that the trial judge was clearly wrong in finding no racial discrimination by the prosecutor. We disagree.

The Court of Criminal Appeals recently addressed this issue in *Cantu v. State*, 842 S.W.2d 667 (Tex.Crim.App.1992). The court wrote:

> "Disparate treatment" ... cannot automatically be imputed in every situation where one of the State's reasons for striking a venireperson would technically apply to another venireperson whom the State found acceptable. The decision to strike a particular venireperson is not susceptible to rigid quantification; rather, it is a fluid process, often hinging on the interaction of a number of variables and permutations. For example, it is unlikely that two venirepersons on one panel will possess the same objectionable attribute or character trait in precisely the same degree. Such qualitative distinctions may cause a prosecutor to challenge one venireperson and not the other.
>
> Thus, when the State has offered more than one plausible reason for striking a venireperson, it is proper to review these reasons in their entirety in order to assess whether the State's explanation was valid or merely pretextual. *Where ... the State has offered numerous race neutral reasons for its challenge, we cannot say that the fact that there were other acceptable jurors possessing one or more of these objectionable attributes is sufficient to establish disparate treatment.*

*Id.* at 689 (citations omitted) (emphasis added).

There is another factor we consider important in ruling on the strike against Mr. Bryant. The fact that the prosecutor did not strike two other black venire members, both of whom were near the front of the panel and thus certain to serve if not struck,[2] is a fact the trial judge could consider in determining the prosecutor's motive. We recognize that reversal is required if even one venire member was struck for racial bias, no matter how many others of the same race served on the jury. *Whitsey v. State*, 796 S.W.2d 707, 716 (Tex. Crim.App.1989). In determining whether one venire member was improperly struck, however, the judge did not have to ignore the prosecutor's obvious willingness to accept two jurors of the same race as Mr. Bryant and appellant. If a prosecutor takes some jurors of a particular race and rejects others, a trial judge may, in appropriate cases, infer that race was not the prosecutor's motive for the strikes, because others of the same race were accepted as jurors. Every case is unique, of course, and taking some jurors of an identifiable racial group will not automatically mean that all the other peremptory strikes were pure. Based on this record, however, we cannot say the trial judge was clearly wrong in reaching that conclusion. *Whitsey*, 796 S.W.2d at 726 (op. on reh'g).

Point of error one is overruled.

In his second point of error, appellant asserts the evidence is insufficient.

We follow the standard of review set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard of review applies to both direct and circumstantial evidence. *Geesa v. State*, 820 S.W.2d 154, 158, 159 n. 6, 160 n. 8, 161 (Tex.Crim.

---

**2.** The two blacks not struck by the State were numbers two and 15 on the venire. Both served as jurors.

App.1991); *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983). In this instance, an additional principle of appellate review applies: to the extent that appellant's conviction rests upon circumstantial evidence, his conviction cannot stand unless the circumstances exclude every other reasonable hypothesis except that of appellant's guilt. *Humason v. State*, 728 S.W.2d 363, 366 (Tex.Crim.App.1987).[3]

Viewed most favorably to the verdict, the evidence shows that Eugene Smith entered a supermarket wearing a construction hardhat, dark sunglasses, and a wig, approached the courtesy booth, and asked to cash a check. Smith handed the clerk a bag and quietly, so only she could hear, told her to put all the money in it. When she hesitated, he said, "Bitch, I'm going to kill you. I have a gun." She complied, and handed the bag full of money back to Smith. The two talked about whether she had given Smith all the money, while Smith continued his threats. Finally, Smith apparently left the booth and walked toward the door.

Meanwhile, appellant approached a manager, who was the only other employee near the booth. Appellant also wore a construction hardhat and dark glasses, and was otherwise dressed like Smith. Appellant asked the manager to take him to an advertisement board near the front door, where the store posted its specials. She followed him there, and appellant positioned himself so that he could see the courtesy booth, but the manager could not. He then asked her a string of unusually repetitive and nonsensical questions about the specials. When Smith passed their location, appellant abruptly turned and, without finishing his conversation, walked out right behind Smith. There were no words between them. Appellant and Smith proceeded at the same rapid pace, left the store simultaneously, and drove off in a green Oldsmobile without license plates. Smith drove. The police spotted the green car nearby. When they approached, it fled at speeds over 100 miles per hour.

Ultimately, the Olds crashed, and within seconds police caught Smith and appellant, still in the vehicle. Inside the vehicle were hardhats and sunglasses, like those the store employees saw the two men wearing; two license plates; two wigs; and $1200 in cash. Two guns with ammunition were also recovered. One gun was found on the ground where appellant had been lying while being handcuffed.

The foregoing evidence is plainly sufficient to prove appellant was a party aiding Smith under Tex.Penal Code Ann. § 7.02(a)(2) (Vernon 1974).

■ Appellant contends the evidence is insufficient because (1) there is no evidence to show that appellant was not wearing a hard hat, glasses, and a jacket for a legitimate reason, such as to work on the docks in Galveston; (2) appellant did not drive the "getaway car"; (3) there is no evidence to show any activity before the commission of the offense that would show appellant as a party to the offense; (4) appellant's acts in staying in the automobile being driven by Smith were not voluntary, in that no one can leave an automobile being driven by someone else at 100 miles per hour; (5) there is no evidence that appellant knew that there were pistols in the automobile before the chase began, as they may have been in the glove box as indicated by Smith in his testimony; (6) the pistol found on the ground where appellant had been lying

---

**3.** *Geesa* rejected this reasonable hypothesis legal formula—the so-called "analytical construct"—as a method of appellate review for evidentiary sufficiency in Texas criminal cases, 820 S.W.2d at 161, but the court limited the application of the new rules it formulated "to the case at bar and all cases tried hereafter." 820 S.W.2d at 165. The analytical construct therefore is inapplicable to cases tried *after* November 6, 1991, the date of the *Geesa* decision. *Branch v. State*, 833 S.W.2d 242, 244 n. 2 (Tex.App.—Dallas 1992, no pet.); *Steward v. State*, 830 S.W.2d 771, 774 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Randle v. State*, 828 S.W.2d 315, 317 n. 4 (Tex. App.—Austin 1992, no pet.); *Fisher v. State*, 827 S.W.2d 597, 602 n. 10 (Tex.App.—San Antonio 1992), aff'd, 830 S.W.2d 831 (Tex.App.1992). It is to be used in, and only in, cases tried on or before November 6, 1991. *Geesa*, 820 S.W.2d at 165. Trial of this case commenced on November 4, 1991; the jury was charged on November 6, and rendered its verdict that same day. Accordingly, the reasonable hypothesis analytical construct is to be employed on this appeal.

could "just as easily have been thrown down by Smith" as by appellant; (7) appellant's conduct at the store is equally consistent with legal as with illegal activity, in that there is no evidence to indicate that his conversation with the store manager was anything more than an effort by appellant to "amuse himself" while he waited for Smith to complete innocent business, such as cashing a check, making a purchase, or getting some change. We hold that none of these speculative possibilities renders the evidence insufficient.

> *It is not necessary ... that every fact point directly and independently to the guilt of the accused.* The cumulative force of all the incriminating circumstances may be sufficient to warrant a conclusion of guilt. It is not required to prove to a moral certainty that the circumstances presented actually exclude every hypothesis that the criminal act may have been committed by another person; *it must only exclude every reasonable hypothesis raised by the evidence that would tend to exculpate the accused.* It is enough that the conclusion of guilt is warranted by the combined and cumulative force of all the incriminating circumstances.

*Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App.1987) (emphasis added) (citations omitted). Moreover, in determining whether an individual is a party, the court may look to events before, during, and after the offense. *Id.* at 684.

We hold that no hypothesis except guilt was reasonable, given all the incriminating circumstances. A rational jury could have found all elements of the crime beyond a reasonable doubt.

Point of error two is overruled.

The judgment is affirmed.

JONES, J., not participating.