**Earnest Ray WALKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–93–006–CR.**

Court of Appeals of Texas, Waco.

July 28, 1993.

Released for Publication Aug. 18, 1993.

Donald V. Phillips, Corsicana, for appellant.

Patrick C. Batchelor, Crim. Dist. Atty., Jamie Bagnall, Asst. Crim. Dist. Atty., Corsicana, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Earnest Ray Walker was convicted of attempted sexual assault and sentenced to life imprisonment. On appeal, Walker raises three points of error. First, that the trial court erred in denying Walker's *Batson* motion; second, that the State made an improper jury argument; and finally, that Walker's request for a directed verdict on the basis of insufficient evidence was improperly denied.

 Walker's first point of error is a *Batson* challenge. The party raising a *Batson* challenge must first make a *prima facie* showing that the opposing party has exercised its preemptory strikes with a discriminatory purpose.[1] *Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986); *see also Emerson v. State,* 851 S.W.2d 269, 271 (Tex.Crim.App. 1993); *Williams v. State,* 804 S.W.2d 95, 101 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). The burden then shifts, requiring the non-movant to articulate neutral explanations sufficient to overcome the inference of discrimination. *Emerson,* 851 S.W.2d at 271–72. The trial court may not merely accept the specific reasons given at face value, but must determine, considering the demeanor and credibility of the challenged party, whether the facially neutral explanations are pretextual. *Id.* at 273.

---

1. Although the initial language of *Batson* and its progeny used "racial" instead of "discriminatory," later cases have extended protection to ethnic minorities such as Hispanics. *Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Further, *Batson* originally applied only to defendants challenging prosecutorial strikes. *Subsequent case law allows* either party to challenge discriminatory strikes. *Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

Our review of the trial court's decision on the *Batson* issue is based on the "clear error" standard. *Vargas v. State*, 838 S.W.2d 552, 554 (Tex.Crim.App. 1993) (citing *Hernandez v. State*, — U.S. —, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). We apply this standard by reviewing the record, including the voir dire, the racial makeup of the venire, the prosecutor's neutral explanations, and the appellant's rebuttal and impeaching evidence. *Id.* Although we may consider the objective factors discussed in *Keeton v. State*, 749 S.W.2d 861, 868 (Tex.Crim.App.1988), the overriding standard is still whether the trial court's decision is supported by the record so that it is not clearly erroneous. *Vargas*, 838 S.W.2d at 554. A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex.Crim.App.1990) (on rehearing) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

The case at bar is similar to *Vargas*. In that case the appellant argued that the prosecutor asserted a group bias without showing that the group trait applied to the challenged veniremember; that there was no examination or perfunctory examination of the challenged veniremembers; and that the given explanation had no rational relationship to the case on trial. *Vargas*, 838 S.W.2d at 554. Further, the appellant did not impeach the prosecutor to show that prosecutor's assumptions regarding the challenged veniremembers would not favor the state in any given case. *Id.*

Walker made out his *prima facie* case by showing that the individual circumstances surrounding the State's preemptory strikes raised an inference of discriminatory purpose. The State exercised six of its ten strikes against black veniremembers, leaving only one black veniremember on the jury. The prosecutor then testified, under oath, regarding his personal knowledge of each of the challenged veniremembers. In particular, Walker argues that the prosecutor's race-neutral explanations for striking veniremembers Beasley and Hall were pretextual.

The non-discriminatory reasons offered by the prosecutor were that both Beasley and Hall were obese and that both had relatives prosecuted by his office. The prosecutor testified that all of the books he had read on the subject indicated that jurors who are obese tend to be more lenient on punishment. The prosecutor also testified that he had prosecuted several of Beasley's relatives and that Hall had a relative who was prosecuted for theft.

Although these reasons would seem stronger had the prosecutor individually questioned all of the stricken veniremembers, the reasons are not rendered impermissible simply because he did not do so. *See id.* at 556. Defense counsel did not impeach the prosecutor on any of his reasons, even when the prosecutor indicated that there was no disparate treatment among the veniremembers. The prosecutor testified that he did not ask individual questions of any veniremembers. He also denied defense counsel's suggestion that he checked only the black veniremembers to determine whether they had relatives with cases pending in his office. Finally, the prosecutor testified that he had marked a white veniremember on his list as one he would strike because she was obese, but that she had been challenged for cause by the defendant. The trial court implicitly found the prosecutor's explanations to be non-discriminatory, and there is nothing before us to suggest otherwise. *See id.*

We note that the court in *Emerson* found that, because the record reflected that the prosecutor did not strike white veniremembers with the same or similar characteristics relied upon in striking the minority veniremembers, the prosecutor's race-neutral explanations were pretextual and the trial court's findings were not supported by the record. 851 S.W.2d at 274. However, unlike the record in *Emerson*, the appellant in this case does not complain that the classifications used by the prosecutor to strike Beasley and Hall were not uniformly applied to the non-black venire-

members. *See id.* Because there is nothing in the record to show that the prosecutor's stated reasons were pretextual, we overrule point of error one.

■ Walker's second point of error regards an improper jury argument. The State's arguments contain remarks concerning parole laws that are ordinarily not admissible. They are admissible, however, when they are in answer to comments previously made by opposing counsel. *See Franklin v. State,* 693 S.W.2d 420, 429 (Tex.Crim.App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1985). That is exactly the situation in this case. In closing arguments, defense counsel mentioned the length of the prospective sentence for his client. As a result, the State was entitled to make explanatory remarks concerning the inaccuracy of the defense attorney's remarks. We overrule Walker's second point of error.

■ Walker's third point of error raises a sufficiency-of-the-evidence question. Specifically, he argues that the evidence is insufficient to support his conviction for attempted sexual assault. The appropriate standard of review requires us, after viewing the evidence in a light most favorable to the verdict, to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim.App. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). The fact-finder is best positioned to gage the credibility of witnesses and to weigh testimony accordingly. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). Furthermore, the appellate court should not place itself in the position of a "thirteenth juror." *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ Walker concedes that an assault occurred, but questions the sufficiency of the evidence to support his conviction for attempted sexual assault. The elements of sexual assault are set out in section 22.011 of the Texas Penal Code. TEX.PENAL CODE ANN. § 22.011 (Vernon 1989). With regard to an attempted offense, the record need only reflect sufficient evidence that actions of a defendant constituted more than mere preparation. *Gibbons v. State,* 634 S.W.2d 700, 706 (Tex.Crim.App.1982).

■ The complainant testified that Walker ripped the front of her dress open immediately before he began to beat and drag her. She also testified that Walker was grabbing her legs and pantyhose while dragging her into a nearby alley. Finally, she testified that Walker touched her in "a personal place" when he grabbed her dress. There was no evidence that Walker exposed himself to the victim, but sexual assault does not require exposure of the assailant's genitalia. *See Johnson v. State,* 633 S.W.2d 888, 889 (Tex.Crim.App. 1982). All testimony was assigned due weight by the jury, which found that Walker was guilty of attempted sexual assault. We find that, when reviewing all the evidence in a light most favorable to the verdict, a rational jury could find the elements of attempted sexual assault beyond a reasonable doubt. We overrule Walker's third point of error.

We affirm the judgment.

VANCE, J., dissenting.

VANCE, Justice, dissenting.

The central issue in deciding Walker's *Batson* point is: After the complaining party has made a prima facie case of discrimination in the exercise of peremptory strikes, who bears the burden of showing that the striking party's race-neutral reasons were or were not pretextual? In other words, understanding that a prima facie case of discrimination has been made, will we require that the party who exercised the strikes develop a record that supports the court's ruling that its explanations were race neutral or will we require that the complaining party develop a record that shows that the strikes were in fact discriminatory. Because I believe that *Emerson v. State* has already answered that question, I respectfully dissent. *Emerson v. State* 851 S.W.2d 269 (Tex.Crim.App.1993).

The majority, after finding that Walker made a prima facie case of discrimination, relies on *Vargas v. State* to hold that nothing in the record suggests that the prosecutor's explanations for his strikes were pretextual. *See Vargas v. State*, 838 S.W.2d 552 (Tex.Crim.App.1992). *Emerson*, decided by a unanimous Court after *Vargas*, dictates a contrary result. *See Emerson*, 851 S.W.2d at 273–74.

After a party gives non-discriminatory reasons for striking prospective minority jurors from the venire, the trial judge must "determine whether these facially neutral explanations are contrived to avoid admitting acts of discrimination." *Id.* at 273. "The trial judge may not, however, merely accept the specific reasons given by the prosecutor at face value." *Id.*

Although involving a claim of disparate treatment that the Court upheld, *Emerson* also involved a prosecutor's failure to question a prospective juror about characteristics that he claimed that the juror, as a member of a group, possessed. *Id.* The Court held that, without specific questions having been directed to the panel or to the individual juror showing that the juror in question (an unemployed college teaching assistant) possessed the characteristic (being a liberal) attributed to the group, the record being otherwise silent, the explanations were "insufficient as a matter of law to rebut appellant's prima facie showing of racial discrimination in the jury selection process." *Id.* at 274.

Here, the prosecutor did not ask either Beasley or Hall any question designed to justify his claim that either of them, being "obese," would "tend to be more lenient on punishment." Thus, he did not show that the trait that he ascribed to "obese" persons applied to either juror. Nor did he ask any question of either juror that would support his striking them because both had relatives that his office had prosecuted. The record is silent about the identities of the relatives, the crimes for which they were prosecuted, the degree of relationship between the jurors and those relations, the nature of their personal relationship, or the outcome of the prosecutions. Thus, the prosecutor did not establish that either juror possessed any trait or had any feeling, arising out of the prosecution of a relative, that would justify his explanation that he struck them because they were relatives of persons accused of crimes.

In short, the State "applied a group bias without inquiring whether it applied to [Beasley or Hall] specifically." *See id.* Because neither was shown to have the characteristics ascribed, the trial court's action in holding that the State rebutted the prima facie case is not supported by the record, cannot be accorded deference, and is therefore clear error. *See id.; Vargas*, 838 S.W.2d at 554 (adopting the "clear error standard of review").

*Emerson* does not dictate that the reasons given by the prosecutor for its strikes against Beasley and Hall would, under all circumstances, be pretextual. It does say that the trial court's decision must be based on information in the record; otherwise, the record does not support the finding. Fairly read, it requires that the party attempting to explain the challenged strikes bears the burden of seeing that the record is sufficient to support its explanations for those strikes. *Emerson* 851 S.W.2d at 273. It does not, to my mind, place the burden of refuting unsupported explanations on the complaining party, who has already made a prima facie showing of discrimination.

The discriminatory strike of even one prospective juror invalidates the entire jury selection process. *Id.* at 274. Because the State did not develop a record sufficient to support its race-neutral reasons for striking Beasley and Hall, I would reverse the judgment and remand the cause for a new trial.[1]

---

1. *Emerson* also recognizes that the legitimacy of     race-neutral explanations for the use of peremp-

tory strikes can be weighed against the *"Keeton* factors." *Emerson,* 851 S.W.2d at 273; *Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Crim.App. 1988). At least half of the *Keeton* factors are present in this case, *i.e.,* a pattern of strikes against minority jurors (6 of 10); a lack of

questions to Beasley and Hall; and the dismissal of most minority jurors (all but one).