Edward Paul JACK, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–316 CR.

Court of Appeals of Texas, Beaumont.

Dec. 29, 1993.

Linda C. Cansler, Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont for State.

WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

This is an appeal from a felony conviction for the possession of cocaine in the amount of less than 28 grams. The appellant was a repeat felony offender. The jury found the appellant guilty. The trial court sentenced the appellant to sixteen years confinement in the Institutional Division of the Texas Department of Criminal Justice. The appellant now appeals. We affirm.

The appellant has set forth two points of error. They read as follows:

1. The Court erred in denying Defendant's Motion For a Mistrial during voir dire because the State tainted the Panel of Veniremen when the Prosecutor improperly introduced the subject of a greater punishment for someone who had prior convictions.

2. The Court erred in denying Defendant's challenge to the jury panel under *Batson* because the State did not give racially neutral reasons for excluding some Afro–American Veniremen from the panel.

In point of error number one, the appellant complains that the comment made by the prosecutor impaired the appellant's right to the presumption of innocence. In other words, the comment made by the prosecutor exposed the prospective jurors to injurious and prejudicial matters which are reasonably calculated to prevent a fair trial. The comment of which the appellant complains refers to a statement made by the prosecutor during voir dire wherein the prosecutor attempted to explain to the veniremen the range of punishment for a repeat or habitual felony offender. *See* TEX.PENAL CODE ANN. § 12.42 (Vernon 1973 and Supp. 1993). It is well settled in this State that where a jury *may* be called upon to assess punishment, both the State and the defendant are entitled to question the jury panel on the applicable law relating to enhancement punishment so long as the explanation of the law is hypothetical and does not inform the jury of any specific allegation in the enhancement paragraph of the indictment against the defendant on trial. *See Bevill v. State,* 573 S.W.2d 781 (Tex.Crim.App.1978); *Martinez v. State,* 588 S.W.2d 954 (Tex.Crim. App.1978). Thus, it is proper to inform the jury of the full range of punishment applicable to an offense which is enhanced by a prior felony offense.

In the case at bar, the prosecutor's voir dire on this subject was well within the approved perimeters. In order to intelligently exercise a party's peremptory challenges, the prospective juror must be informed and qualified as to the full range of punishment applicable to enhancement offenses. *Martinez v. State, supra,* at 956. Clearly, the prosecution can inform *generally* of applicable punishment without reading the precise allegation for enhancement, and thereby avoid offending the presumption of innocence.

Furthermore, if the prosecutor's remark could be construed as going slightly

beyond a purely hypothetical explanation of the applicable law, any possible error was cured by the careful trial judge's specific instruction to the jury to disregard any speculation as to why the explanation was necessary. *Robinson v. State,* 817 S.W.2d 822 (Tex.App.—Fort Worth 1991, pet. ref'd). Point of error number one is overruled.

The appellant contends in point of error number two that any use of peremptory challenges to exclude persons from jury service on account of their race violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, citing *Batson v. Kentucky.*[1] In order for the appellant's argument to be upheld, the appellant must meet his burden of proof set out in *Lewis v. State,* 815 S.W.2d 560 (Tex.Crim. App.1991). In *Lewis,* the court said:

> When a black defendant is convicted by a jury from which black persons have been deliberately excluded on account of their race, then such conviction is unconstitutional. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880). If he can make a *prima facie* case of purposeful discrimination, the State must then offer racially neutral explanations for all peremptory challenges exercised against members of his race. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also* Art. 35.261, V.A.C.C.P. When neutral explanations are offered it then becomes the defendant's burden to persuade the court that such challenges were racially motivated in fact. *Williams v. State,* 804 S.W.2d 95, 97 (Tex.Cr.App.1991).

Here, the prosecutor articulated reasons for his exclusion of each black veniremember in question. These reasons were invariably based upon factors other than race. Accordingly, proof of racially motivated strikes in violation of the Fourteenth Amendment fell ultimately to appellant.

In order to invoke the protections promised by *Batson,* a defendant (appellant) must establish a prima facie case of discrimination. The appellant can establish this by showing that he is a member of a cognizable racial group, that the prosecutor exercised peremptory challenges to eliminate members of the defendant's race from the jury, and any other facts or circumstances raising an inference of discrimination in the exercise of peremptory strikes. *Tennard v. State,* 802 S.W.2d 678 (Tex.Crim.App.1990). Once the defendant has done that, then the burden of proof shifts to the State to articulate a racially neutral explanation for exercising its peremptory strikes. *Lewis v. State, supra.* The ultimate burden of production and persuasion remains with the defendant to show by a preponderance of the evidence that the allegation of purposeful discrimination is sound. *Williams v. State,* 804 S.W.2d 95 (Tex.Crim.App.1991).

### Standard of Review

On appeal, this Court is to apply the "clear error standard of review". *See Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). In applying this standard, the court of appeals must review the record, including voir dire, the racial makeup of the veniremembers, the prosecutor's neutral explanations[2], and the appellant's rebuttal and impeaching evidence. The evidence must be considered in the light most favorable to the trial court's rulings and determine if those rulings are supported by the record. *See, Williams, supra,* 804 S.W.2d at 101. The overriding standard still remains whether the trial judge's decision was supported by the record so that it is not clearly erroneous. *See Vargas v. State,* 838 S.W.2d 552 (Tex.Crim.App.1992)[3]. If the trial court's findings are supported by the record, then we must not disturb the trial court's rulings.

---

1. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. In evaluating the prosecutor's neutral explanation the trial court evaluates the prosecutor's state of mind based on the prosecutor's demeanor.

3. In *Vargas v. State, supra,* at 554, the Court of Criminal Appeals adopted the "clear error standard of review" as explained by the Supreme

As a reviewing court we are bound by TEX.R.APP.P. 52(a) not to duplicate the role of the trial court. We are not to decide factual issues *de novo*.

### Standard of Review to Case at Bar

■ In applying this standard to the instant case, we find that the trial court's findings were supported by the record. The appellant complains specifically, in his brief, of the prosecutor's peremptory strikes to panelists Marshall, Henry, Threats, Ratcliff, and Edison. The appellant argues that these veniremembers were struck because they belonged to the *Black race*. However, the trial court disagreed. The trial court found that the reasons given by the prosecutor for striking certain veniremembers to be racially neutral. The court stated:

> THE COURT: Okay. The last time The State used all of its peremptory challenges to strike members of the minority race, I granted the motion, a Batson motion. But I think these are racially neutral because you didn't go through and eliminate every one of them as it was in that case. And there was still some—and you still had some peremptory challenges you could have used. So, I think I'm going to go ahead and accept the racially neutral and deny the Batson motion.

The prosecutor articulated racially neutral reasons for striking each of these veniremembers. These reasons were invariably based upon factors other than race. The prosecutor stated this reason:

> MR. THOMAS: As to No. 7, Ms. Marshall, during voir dire she had indicated to me some problems with selective enforcement of drug laws. She says, well, it depends on who they're enforcing drug laws against. And I inquired about is there a selective enforcement, do you think? And I think she indicated that either that's possible, or I'm not sure of the specific answer she gave. But it indicated to me she had a fear that there was selective enforcement of drug laws taking place. That's why I struck her.

This explanation is a racially neutral reason.

The appellant does not argue that this is not a racially neutral reason, but only asserts that it was unclear as to what this panelist's attitude was. This argument by the appellant's counsel does not diminish the validity of the prosecutor's reasonable belief as to her attitude as being a proper basis for a peremptory strike of any juror, black or white. Importantly, this question was not directed solely to panelist number seven, but was presented to the entire jury panel. We agree with the trial court that the reason conveyed by the prosecutor for striking panelist number seven was racially neutral.

### Panelists # 10, Henry; # 25, Threats; # 36, Ratcliff

■ The panelists Henry, Threats, and Ratcliff were all school teachers. They were all struck by the prosecutor. The prosecutor stated that his reason for striking these panelists was simply because they were school teachers. He stated that he tried to strike all school teachers from the panel. The appellant did not strongly object to these strikes.

---

Court in *Hernandez v. New York, supra*. In *Hernandez* the Supreme Court emphasized that the factual nature of a *Batson* inquiry stating that:

> *Batson's* treatment of intent to discriminate as a pure issue of fact, subject to review under a deferential standard, accords with our treatment of that issue in other equal protection cases. (citations omitted)
>
> ....
>
> Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding will "largely turn on evaluation of credibility." 476 U.S., at 98, n. 21 (106 S.Ct. at 1724, n. 21). In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." (citation omitted)

Some legitimate reasons for striking a potential juror are 1) age; 2) lack of employment; and 3) religious affiliation. In striking a group based on classification or employment, it is not an essential requirement that the State's attorney fully expound on his reason for striking a particular group or class so long as his reason is race neutral and not merely a pretext. *See Whitsey v. State,* 796 S.W.2d 707, 719 (Tex.Crim.App. 1988) (dissenting opinion).

In the case at bar the record clearly reflects at least one plausible reason for striking all school teachers. The appellant's attorney opened her voir dire of the panel as follows:

> MS. CANSLER: May it please the Court, Mr. Thomas. I'm Linda Cansler. I was introduced to you earlier. And I have a law practice. My office is here in Beaumont, although I've been away at different times and have come back with my law practice. And I do know about 28 grams because part of my varied adult life I was a math teacher. So, I'm going to go out on a limb. About an ounce, roughly an ounce, a little packet of Sweet & Low. I think that's about an ounce. That's 28 grams. So, something less than 28 grams, we're getting to a pretty small amount, aren't we? 1 gram would be 1/30—or 1/28 of that little packet of Sweet & Low.
>
> MR. THOMAS: I'm going to object. I'm not sure—
>
> THE COURT: (Interrupting) A Sweet & Low package is a gram. So, 28 of those packages make an ounce basically.
>
> MS. CANSLER: Well, I guess I don't read the fine print. But anyway, we're talking about a very small amount.

This excerpt from the record supports a legitimate concern by the State's attorney that school teachers on the panel might tend to identify with and sympathize with a former teacher, especially one who had been so corrected in front of her class by her supervisor. Although the prosecutor did not openly state this as a basis for his reason for striking these school teachers, the trial court and this Court can conclude that this excerpt constitutes a sufficiently racially neutral explanation. *Hernandez v. State,* 808 S.W.2d at 544 (Tex.App.—Waco 1991, no pet.).

In *Hernandez,* the Waco appellate court, after looking at the statement of facts containing certain statements made by venireman who testified on voir dire about participation in student riots and unpleasant experiences with police; the Court found and determined such explanation to be racially neutral. It must be emphasized that in this case there is no showing that the prosecutor struck all the blacks off his list or that he failed to strike any white teacher. Furthermore, some blacks (veniremembers No. 2, a black male; No. 8, a black female; No. 17, a black male) did serve on the jury. Also, it must be stressed that the prosecutor only used seven of his allotted ten peremptory strikes. We find under this record the reason for striking the teachers was racially neutral.

### Panelist # 12, Mr. Edison

The prosecutor stated that veniremember No. 12, Mr. Edison, was struck because he had previously served on two criminal juries and that neither one of them had reached a verdict. This was clearly, again, a racially neutral reason.

It was the belief and conviction of the prosecutor that Mr. Edison had served on two hung juries. Even if the prosecutor was mistaken, the trial judge could still conclude that the strike was race neutral because the prosecutor based his peremptory strike on an honest belief. Besides, strikes may be based upon the prosecutor's hunches and past experience, so long as the actual motive is not racial discrimination. *See Keeton v. State,* 749 S.W.2d 861 (Tex.Crim.App.1988).

If it appears that the prosecutor simply elected to use peremptory challenges on prospective jurors whose views nearly rendered them ineligible for cause, or if these peremptory eliminations are based on racially neu-

tral explanations that are plausible; then, the burden of proof shifts to the appellant to persuade the trial judge not to rule in favor of the prosecutor. The appellant has not done so here.

The ultimate decision falls to the trial judge to determine if the explanations averred by the prosecutor are racially neutral and not discriminatory. Numerous courts of appeals have deferred on this type of issue, *i.e., Batson,* to the trial court's findings because the trial court has personally observed the proceedings and the demeanor of the protagonist and has a better understanding of the facts than does the appellate court. The appellate court has only a cold record before it. In other words, if the trial court's appraisal of the evidence is plausible in light of the record viewed in its entirety, then this Court may not reverse it even though this Court thinks that it would have made a different decision. *See Whitsey v. State, supra.* Even if there are two permissible views of the evidence, the *fact-finder's choice* cannot be disturbed. Therefore, we overrule point of error number two.

We affirm the trial court's judgment.

AFFIRMED.