armanderiz 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00241-CR







Steven Armendariz, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0920627, HONORABLE JON WISSER, JUDGE PRESIDING







 This is an appeal from a felony conviction for theft of a vehicle. Tex. Penal Code
Ann. § 31.07 (West 1994). The jury found appellant Steven Armendariz guilty, and the district
court sentenced him to ten years' probation and a fine of $10,000. Armendariz now appeals the
conviction. We will affirm the judgment of the district court.



BACKGROUND


 The sole issue presented on appeal is whether the district court erred in overruling
appellant's motion to dismiss the jury and select a new venire because the State used its
peremptory strikes in a racially discriminatory manner. Appellant argues that the prosecutor used
his peremptory challenges to exclude black veniremembers from service on the jury because of
their race. Excluding veniremembers from jury service because of race violates the Equal
Protection Clause of the Fourteenth Amendment to the United States Constitution. Batson v.
Kentucky, 476 U.S. 79, 79 (1986). Armendariz specifically argues that the State used its
peremptory strikes to exclude three black veniremembers: Mr. Morgan, number 9, Ms. Perez,
number 22, and Ms. Fisher, number 27, in violation of Batson.



Burden of Proof

 The Court of Criminal Appeals has outlined the applicable burden of proof in a
Batson challenge: 



When a . . . defendant is convicted by a jury from which black persons have been
deliberately excluded on account of their race, then such conviction is
unconstitutional. If he can make a prima facie case of purposeful discrimination,
the state must then offer racially neutral explanations for all peremptory challenges
exercised against members of his race. When neutral explanations are offered it
then becomes the defendant's burden to persuade the court that such challenges
were racially motivated in fact.



Lewis v. State 815 S.W.2d 560, 563-64 (Tex. Crim. App. 1991), cert. denied, 503 U.S. 92 (1992)
(citations omitted).

 The appellant, Armendariz, is not black. Although Lewis suggests that the State
need only offer racially neutral explanations for peremptory challenges made against
veniremembers of the defendant's race, the Supreme Court of the United States has held that "a
criminal defendant may object to race-based exclusions of jurors effected through peremptory
challenges whether or not the defendant and the excluded juror share the same race." Powers v.
Ohio, 499 U.S. 400, 400 (1991). Thus, for the purpose of a Batson challenge, the defendant's
burden of proof is the same whether or not he shares the same race as the excluded
veniremembers.

 The analysis of a Batson challenge consists of three stages. First, the defendant
must make a prima facie showing of discrimination. The defendant can accomplish this by
showing that the State used its peremptory strikes to eliminate members of a cognizable racial
group from the venire. The defendant can also include any additional facts that would lead the
district court to find that the State acted in a racially discriminatory manner. See Tennard v.
State, 802 S.W.2d 678, 680 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259 (1991). Then,
in the second stage, the burden of proof shifts from the defendant to the State to offer racially
neutral reasons for its peremptory strikes. Williams v. State, 804 S.W.2d 95, 97 (Tex. Crim.
App.), cert. denied, 501 U.S. 1239 (1991). If the State can present the court with racially neutral
reasons for its strikes, the burden of production and persuasion shifts back again to the defendant
for the final stage of the Batson claim. In the third stage, the defendant must persuade the trial
court that the State's reasons for its peremptory strikes are pretextual and are in fact racially
motivated. See Cantu v. State, 842 S.W.2d 667, 689 (Tex. Crim. App.), cert. denied, 113 S.Ct.
3046 (1992).



Standard of Review

 On appeal of a Batson challenge, this Court must apply a "clear error standard of
review." See Hernandez v. New York, 500 U.S. 352, 364-65 (1991). In applying this standard,
we must review all of the evidence in the light most favorable to the district court's ruling and
then determine if the district court's ruling was "clearly erroneous." See Williams, 804 S.W.2d
at 101. If, after reviewing all the evidence, we cannot say that the district court's ruling was
clearly erroneous, we must uphold the district court's ruling even if we feel that we would have
weighed the evidence differently had we been sitting as the trier of fact. See Anderson v.
Bessemer City, 470 U.S. 564, 573-74 (1985).



DISCUSSION


 In this case, we need only address the final stage of the Batson analysis. Because
the prosecutor stated his reasons for the challenged strikes and the district court ruled on the
ultimate question of racial discrimination, we need not decide whether appellant initially
established a prima facie showing of impermissible discrimination. See Hill v. State, 827 S.W.2d
860, 865 (Tex. Crim. App.), cert. denied, 506 U.S. 905 (1992). Additionally, both parties agree
that the State has satisfied the second Batson stage by offering race-neutral reasons for striking
the black veniremembers. Thus, we proceed directly to the final stage of analysis: whether the
district court clearly erred in holding that Armendariz failed to satisfy his burden of proving that
the State's explanations for its strikes were pretextual.

 The State offered five reasons for striking Mr. Morgan, four reasons for striking
Ms. Perez, and five reasons for striking Ms. Fisher. Some of the State's reasons for using its
peremptory strikes overlap among the three dismissed veniremembers. Therefore, we will address
the issue from a topical standpoint, as opposed to analyzing each reason for striking each
veniremember separately.



Occupation

 The first reason the State offered for striking Mr. Morgan was his occupation as
a trash truck driver. One of the reasons the State articulated for striking Ms. Fisher was her
occupation as a clerk. Additionally, the State explained that it struck Ms. Perez because she was
unemployed. An attorney may strike a veniremember because of a particular occupation or
unemployed status. See Tompkins v. State, 774 S.W.2d 195, 202 (Tex. Crim. App. 1987); Jack
v. State, 867 S.W.2d 942, 947 (Tex. App.--Beaumont 1993, no pet.); York v. State, 764 S.W.2d
328, 331 (Tex. App.--Houston [1st Dist.] 1988, pet. ref'd). Additionally, the State is not required
to articulate specific reasons why it believes that members of a certain occupation are not fit to
serve on the jury: 



In striking a group based on classification or employment, it is not an essential
requirement that the State's attorney fully expound on his reason for striking a
particular group or class so long as his reason is race neutral and not merely a
pretext.



Jack, 867 S.W.2d at 947. There is no evidence suggesting that the occupations at issue in this
appeal are racially homogenous. Instead, the State's argument that these veniremembers might
be sympathetic to the defendant because he was uneducated and unemployed is plausible in light
of the facts of this case and offers a racially neutral basis for the strikes.

 Along the same lines, the State articulated another reason for striking Ms. Perez,
namely that her husband was employed as a janitor in the Austin Independent School District. 
Like jurors' occupations, striking a veniremember because of a spouse's occupation is not racially
charged.



Incomplete Juror Questionnaire

 Another reason the State offered for rejecting all three of the black veniremembers
was that none of them completely filled out their juror questionnaire forms. Failure to complete
the juror questionnaire is a valid, racially neutral reason for using a peremptory strike. See
Satterwhite v. State, 858 S.W.2d 412, 423 (Tex. Crim. App.), cert. denied, 114 S.Ct. 455 (1993);
Chandler v. State, 744 S.W.2d 341, 344 (Tex. App.--Austin 1988, no pet.); Jones v. State, 845
S.W.2d 419, 421 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd).



Nonverbal Behavior

 According to the prosecution, each of the dismissed veniremembers exhibited
nonverbal behavior, in one form or another, that led the prosecutors to believe that the panelists
would not make favorable jurors. Picking a jury is not a science, but an art. Both prosecutors
and defense attorneys are called upon in voir dire to make relatively quick decisions about which
jurors will best serve their interests. Often, lawyers have little more to go on than a general
feeling that a particular juror will or will not be able to render justice. In this context, nonverbal
acts of the veniremembers can be a particularly valuable source of information. We note the
proliferation of professional jury selection consultants, articles, and seminars designed to help
attorneys in this difficult task.

 The prosecutor felt that because Mr. Morgan voluntarily engaged in a conversation
with defense counsel and was nodding at defense counsel's commentary, Mr. Morgan would be
particularly sympathetic to the defense's case. In Jones, a veniremember was struck because she
appeared to pay closer attention to the defense than the prosecution. Jones, 845 S.W.2d at 421. 
That court held it was racially neutral to strike a veniremember based on this form of nonverbal
behavior. Id.

 Ms. Perez also exhibited nonverbal behavior that led prosecutors to believe she
would not be particularly sympathetic to the prosecution's case. Likewise, Ms. Fisher was
apparently inattentive during voir dire. Inattentiveness is another form of nonverbal conduct that
might suggest to an attorney that the veniremember will not make a particularly good juror. 
Striking an inattentive veniremember is racially neutral. See Moss v. State, 877 S.W.2d 895, 898
(Tex. App.--Waco 1994, no pet.).



Obesity

 Another reason the State offered for striking Ms. Fisher was her obesity. The State
explained that, in its estimation, an obese juror might be less willing to punish a defendant. We
do not reach the merits of the argument. It is enough to note that obesity is a race-neutral reason
for striking a panel member. See Walker v. State, 859 S.W.2d 566, 568 (Tex. App.--Waco 1993,
no pet.). In Walker, one of the valid reasons the prosecutor gave for striking two black
veniremembers was that they were both obese. Id.



Victim of Crime

 In addition to striking Ms. Fisher because she was obese, the State also asserts that
she was struck because she was the victim of a crime in which the perpetrator was never
apprehended. Mr. Morgan was also the victim of an unsolved crime. The State offered the
explanation that victims of crimes in which the criminals are not arrested may sour them toward
the criminal justice system. This is a racially neutral reason for a strike that is not clearly
pretextual.



Pretextual Basis

 Armendariz has the burden of proving that these racially neutral reasons articulated
by the State are, in fact, pretextual. This burden is a heavy one. Armendariz must convince us
not only that the peremptory strikes were racially motivated but also that the district court's
evaluation of the prosecutor's motives was clearly wrong. In this case, Armendariz falls short
of satisfying that standard.

 Appellant urges us to make a comparative analysis of the black veniremembers who
were struck and the veniremembers who ultimately served on the jury. There are some
similarities. The evidence, however, must be viewed in its entirety. Although some of the jurors
were overweight, none came within one hundred pounds of Ms. Fisher. Although some of the
jurors had conversations with defense counsel, none thanked defense counsel for teaching them
the law as did Mr. Morgan. Although one juror's husband worked for Austin Independent School
District as did Ms. Perez's, that juror was attending college and seemed to have a greater grasp
of the legal concepts being discussed.

 Many courts of appeals have left untouched the decisions of district courts in
Batson challenges because they were simply unable to say from the record that the district court's
judgment was clearly erroneous. The district judge is able to observe the actions and demeanor
of the participants; we have only a cold record from which to conduct our investigation. The
district court is a participant in the process of selecting a jury and as such is closer to all of the
facts and nuances of that process. Because we must observe the process one step removed, we
accord the district court great deference in judging credibility and intent:



In other words, if the trial court's appraisal of the evidence is plausible in light of
the record viewed in its entirety, then this Court may not reverse it even though this Court thinks that it would have made a different decision. Even if
there are two permissible views of the evidence, the fact-finder's choice cannot be
disturbed.



Jack, 867 S.W.2d at 948 (citation omitted) (emphasis in original). In this case, we are unable to
conclude that the district court's denial of appellant's Batson challenge was clearly erroneous. 
Therefore, we overrule Armendariz's sole point of error and affirm the district court's judgment.



 


 Mack Kidd, Justice


Before Justices Powers, Aboussie and Kidd


Affirmed


Filed: February 14, 1996


Do Not Publish



member based on this form of nonverbal
behavior. Id.

 Ms. Perez also exhibited nonverbal behavior that led prosecutors to believe she
would not be particularly sympathetic to the prosecution's case. Likewise, Ms. Fisher was
apparently inattentive during voir dire. Inattentiveness is another form of nonverbal conduct that
might suggest to an attorney that the veniremember will not make a particularly good juror. 
Striking an inattentive veniremember is racially neutral. See Moss v. State, 877 S.W.2d 895, 898
(Tex. App.--Waco 1994, no pet.).



Obesity

 Another reason the State offered for striking Ms. Fisher was her obesity. The State
explained that, in its estimation, an obese juror might be less willing to punish a defendant. We
do not reach the merits of the argument. It is enough to note that obesity is a race-neutral reason
for striking a panel member. See Walker v. State, 859 S.W.2d 566, 568 (Tex. App.--Waco 1993,
no pet.). In Walker, one of the valid reasons the prosecutor gave for striking two black
veniremembers was that they were both obese. Id.



Victim of Crime

 In addition to striking Ms. Fisher because she was obese, the State also asserts that
she was struck because she was the victim of a crime in which the perpetrator was never
apprehended. Mr. Morgan was also the victim of an unsolved crime. The State offered the
explanation that victims of crimes in which the criminals are not arrested may sour them toward
the criminal justice system. This is a racially neutral reason for a strike that is not clearly
pretextual.



Pretextual Basis

 Armendariz has the burden of proving that these racially neutral reasons articulated
by the State are, in fact, pretextual. This burden is a heavy one. Armendariz must convince us
not only that the peremptory strikes were racially motivated but also that the district court's
evaluation of the prosecutor's motives was clearly wrong. In this case, Armendariz falls short
of satisfying that standard.

 Appellant urges us to make a comparative analysis of the black veniremembers who
were struck and the veniremembers who ultimately served on the jury. There are some
similarities. The evidence, however, must be viewed in its entirety. Although some of the jurors
were overweight, none came within one hundred pounds of Ms. Fisher. Although some of the
jurors had conversations with defense counsel, none thanked defense counsel for teaching them
the law as did Mr. Morgan. Although one juror's husband worked for Austin Independent