TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00064-CR







Tinesha Lee, Appellant


v.


The State of Texas, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. 0922296, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING






 A jury convicted appellant Tinesha Lee of capital murder and the court sentenced her to
imprisonment for life. (1) Lee appeals her conviction in six points of error, all relating to the trial court's
adverse rulings on three Batson challenges she raised before trial. See Batson v. Kentucky, 476 U.S. 79
(1986). We will affirm the judgment of conviction.


BACKGROUND

 At the conclusion of voir dire proceedings, the State exercised three of its peremptory
strikes against venirepersons Stephen Jones, Angie Rojas, and Luiz Gaipo. All three were apparently
members of minority ethnic groups. After the jurors were chosen but before they were sworn, Lee
objected to the State's striking the three panel members; she alleged the State struck them solely on the
basis of their race in violation of the Code of Criminal Procedure and Batson. See Tex. Code Crim. Proc.
Ann. art. 35.261 (West 1989); Batson, 476 U.S. 79. The trial court found that Lee had made a prima
facie showing of discrimination and the State offered explanations for its strikes. The court then found that
the State had provided race-neutral explanations for each of the three strikes. After Lee had an opportunity
to rebut the State's explanations, the trial court found that Lee had failed to prove the State's reasons were
mere pretext. The court accordingly overruled Lee's Batson challenges. 

 Lee challenges the trial court's ruling in six points of error. With respect to each
venireperson, she raises two points of error: one alleging the trial court violated article 35.261 of the Code
of Criminal Procedure when the court overruled the challenge and the other alleging the trial court violated
Batson. She does not argue that her rights under the two legal authorities differ.


DISCUSSION

 The State may not exclude a potential juror by using a peremptory challenge based on the
juror's race. Tex. Code Crim. Proc. Ann. art. 35.261; Batson, 476 U.S. 79. To invoke Batson
protections, a defendant must raise an inference that the State purposefully discriminated by using its
peremptory strikes. E.g., Purkett v. Elem, 514 U.S. 765, 768-69 (1995). The prosecutor must then
present an explanation for its strikes that is facially race-neutral. Id. The defendant bears the burden of
ultimately persuading the trial court that the State's "neutral explanation" is really a pretext for
discrimination. Id. We will not disturb the trial court's resolution of a Batson issue unless we find the
court's findings were clearly erroneous. Id. Under this standard of review, we defer to the trial court's
decision unless we are left with a definite and firm conviction that a mistake has been committed. Id.

 The State argues we need not address Lee's challenges because the record does not
contain evidence that the challenged jurors were members of minority groups. The record contains only
Lee's allegations that the jurors were members of minority groups. The State did not, however, contend
before the trial court that the excluded jurors were not minorities. Furthermore, the State does not argue
on appeal that the trial court erred in finding Lee had made a prima facie showing of racial discrimination. 
Therefore, we will assume for purposes of discussing Lee's points of error that Jones, Rojas, and Gaipo
were members of minority ethnic groups.


Venireperson Jones

 According to Lee, Stephen Jones was one of two African American venirepersons in the
strike zone. When Lee pointed out that the State had stricken fifty percent of the African American panel
members, the court looked to the State for a race-neutral explanation. The prosecutor explained he struck
Jones because: Jones had been self-employed all his life as an artist who sculpted and welded, thus being
removed from mainstream society; he refused to reveal his religious preference on the juror information
card; he wore earrings in both ears; he volunteered during voir dire examination that he did not believe in
the death penalty; and he chuckled when the prosecutor asked another venireperson about potential police
misconduct, leading the prosecutor to believe Jones might have been the subject of police misconduct in
the past. 

 Lee attempted to show the State's explanations were pretext by arguing: the State did not
strike another male venireperson who wore one earring; the State did not strike four other venirepersons
who stated they had "no religious preference"; the State did not strike a panel member who worked in
oriental rug restoration, an "art," according to Lee; the record contained no evidence that Jones chuckled
during the voir dire examination; the State questioned Jones more than other panel members; and Jones
gave State-oriented answers to virtually all the prosecutor's questions.

 We conclude the trial court did not err in overruling Lee's challenge. The trial judge is in
the best position to ascertain the credibility of the prosecutor. See Hernandez v. New York, 500 U.S.
352, 364-65 (1991). So long as the trial court's appraisal of the evidence is plausible, we will not disturb
the court's decision. See Jack v. State, 867 S.W.2d 942, 944 (Tex. App.--Beaumont 1993, no pet.). 
The judge witnessed the prosecutor explain the reasons for his strikes and believed the prosecutor when
he declared the strikes were not racially motivated.

 Moreover, the prosecutor gave several plausible reasons for striking Jones, and Lee did
not persuade the court the reasons were pretext. First, the prosecutor believed Jones's two earrings and
occupation as a self-employed artist placed him outside mainstream society. This belief was not patently
unreasonable. A prosecutor may exercise peremptory strikes based on hunches and past experience, even
if they are foolish, so long as they are not motivated by race. See Keeton v. State, 749 S.W.2d 861, 865
(Tex. Crim. App. 1988). Although the record suggests one other male juror wore an earring and was not
stricken by the State, the record does not suggest any other male jurors wore an earring in each ear. In
any event, racial discrimination does not necessarily exist in every situation where one of the State's bases
for striking a venireperson would technically apply to another venireperson whom the State found
acceptable. See Cantu v. State, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992).

 Lee relies on Woods v. State, 801 S.W.2d 932 (Tex. App.--Austin 1990, pet. ref'd),
to support her assertion that a prosecutor may not rely on a stereotype to strike a juror without showing
the juror actually fits the stereotype. In Woods, the State struck a potential juror for having a "punk rock
haircut" that he associated with "liberalism, radicalism, and the drug culture." See Woods, 801 S.W.2d
at 936. This Court held that the prosecutor's explanation was likely pretext. In Woods, (1) the prosecutor
had stricken all eight of the African American jurors in the strike zone, (2) the prosecutor had not stricken
a Caucasian juror who had an unusual haircut, and (3) the prosecutor had not elicited any other information
from the potential juror to support the conclusion that the juror fit the stereotype. Id. In fact, the stricken
juror worked in law enforcement, which supports the opposite conclusion. Woods is distinguishable from
this case because overall, the record in Woods revealed a systematic exclusion of minority venirepersons
and facts that contradicted the prosecutor's explanations.

 The second plausible reason the State asserted was a belief that Jones might be biased
against the State, despite that many of Jones's answers were favorable to the State. The prosecutor
believed Jones had chuckled during a discussion of police misconduct. Furthermore, Jones volunteered
without being asked that he did not believe in the death penalty. These facts could reasonably support the
prosecutor's suspicion of bias, leading the trial court to believe the prosecutor's beliefs were genuine. Lee
argues Jones's opinion about the death penalty was irrelevant because the State elected not to seek the
death penalty in this case. The characteristics a prosecutor finds offensive in a juror need not be related
to the exact subject matter of the case. See Purkett, 514 U.S. at 768-69.

 Third, we are not certain why the prosecutor was troubled by Jones's reluctance to reveal
his religious preference. We note, however, that there is nothing in the record to reflect that any non-stricken panel member refused to reveal his or her religious preference. As Lee points out, four
venirepersons revealed that they had no religious preference, but those responses are different from
Jones's. Although the prosecutor's reasoning is not clear, the proffered explanation was race-neutral and
was not effectively rebutted.

 Fourth, Lee argues the State questioned Jones more than it questioned other panel
members, revealing an intent to disqualify him. The record suggests that at least part of the reason the State
had more dialogue with Mr. Jones was his confusion about some questions and his attempts to engage the
prosecutor in conversation. 

 Finally, we note the State did not strike the other African American juror in the strike zone. 
This bolsters the prosecutor's statement that he did not strike Jones because of race. See Jones v. State,
845 S.W.2d 419, 422 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). There is very little in the record
contradicting the prosecutor's explanations. For the above reasons, any one of which could overcome a
Batson challenge, we are not left with a firm conviction that the trial court made a mistake. We overrule
Lee's first two points of error.


Venireperson Rojas

 According to Lee, the State struck two of four Hispanic venirepersons, one of whom was
Angie Rojas. When the court looked to the State for a race-neutral explanation, the prosecutor stated he
struck Rojas because she was too young. The court noted Rojas was the youngest member of the panel
and overruled Lee's objection. Lee argues the trial court erred because the State failed to show Rojas's
young age caused her to be biased against the State. Young age has been held to be a race-neutral
explanation for striking a juror, without any proof that the juror is biased against the State. E.g., Roy v.
State, 891 S.W.2d 315, 325 (Tex. App.--Fort Worth 1994, no pet.); Barnes v. State, 855 S.W.2d 173,
174 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd); see also Jack, 867 S.W.2d at 947. We overrule
Lee's third and fourth points of error.


Venireperson Gaipo

 Lee challenged the State's exercise of a peremptory strike against Luiz Gaipo, another
allegedly Hispanic venireperson. When the court looked to the State for a reason, the prosecutor explained
he struck Gaipo because he had long hair and a goatee and looked "nonconforming." Lee pointed out in
response that the State did not strike another panel member who had long hair. Lee also argued the State
merely assumed without investigating that Gaipo was "nonconforming." The State asked Gaipo only one
question and Gaipo's answer was favorable to the State. Lee again cites Woods for support.

 We first note that the other panel member who had long hair did not also have a goatee. 
Furthermore, the United States Supreme Court has held that having long unkempt hair and a goatee beard
is a race-neutral reason to strike a juror. See Purkett, 514 U.S. at 769. Finally, Woods is distinguishable
for the reasons discussed above. We overrule Lee's fifth and sixth points of error.


CONCLUSION

 We have held that the trial court did not err in concluding the prosecutor provided plausible
race-neutral explanations for striking Jones, Rojas, and Gaipo and in concluding Lee failed to prove the
explanations were mere pretext. Accordingly, we affirm the judgment of conviction.



 __________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: July 24, 1997

Publish
1. Lee was indicted for the offense of capital murder on May 13, 1992. A jury convicted her of
the offense but this Court reversed the conviction and remanded the cause for a new trial. A jury again
convicted Lee of capital murder; this is the appeal of the second conviction. 



n of bias, leading the trial court to believe the prosecutor's beliefs were genuine. Lee
argu