PD-1174-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/19/2015 4:53:09 PM
Accepted 10/19/2015 5:12:48 PM
ABEL ACOSTA
CLERK

NO. PD-1174-15

IN THE TEXAS COURT OF CRIMINAL APPEALS

_____

HENRY ANDRE WINZER,

Appellant

V.

THE STATE OF TEXAS,

Appellee

_____

FROM THE FIFTH DISTRICT COURT OF APPEALS
CAUSE NO. 05-14-01079-CR

ON APPEAL FROM THE 422ND JUDICIAL DISTRICT COURT
KAUFMAN COUNTY, TEXAS
CAUSE NO. 14-00334-422-F
THE HONORABLE MICHAEL B. CHITTY PRESIDING

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

GARY UDASHEN
STATE BAR NO. 20369590
gau@sualaw.com

TIFFANY ALEX TALAMANTEZ
STATE BAR NO. 24079894
tiffany@sualaw.com

SORRELS, UDASHEN & ANTON
2311 CEDAR SPRINGS ROAD
SUITE 250
DALLAS, TEXAS 75201
(214) 468-8100 Office
(214) 468-8104 Fax

ATTORNEYS FOR APPELLANT

FILED IN
COURT OF CRIMINAL APPEALS

October 19, 2015

ABEL ACOSTA, CLERK

# **GROUND FOR REVIEW**

The Court of Appeals erred in rejecting Winzer's *Batson* objection based on an erroneous belief that the Court of Criminal Appeals has disavowed its previous holdings in *Emerson* and *Whitsey*.

# IDENTITY OF PARTIES AND COUNSEL

For Appellant Henry Andre Winzer:

       Gary Udashen
       Katherine Reed
              *Trial Counsel*
       Sorrels, Udashen & Anton
       2311 Cedar Springs Suite 250
       Dallas, Texas 75201

       Gary Udashen
       Tiffany Talamantez
              *Appellate Counsel*
       Sorrels, Udashen & Anton
       2311 Cedar Springs Suite 250
       Dallas, Texas 75201

For Appellee the State of Texas:

       Marc Moffit
       Shelton Gibbs
              *Trial Counsel*
       Kaufman County District Attorney's Office
       100 Mulberry Street
       Kaufman, Texas 75142

       Sue Korioth
              *Appellate Counsel*
       Kaufman County District Attorney's Office
       100 Mulberry Street
       Kaufman, Texas 75142

Trial Judge:

       Judge Michael B. Chitty
       422nd Judicial District Court of Kaufman County, Texas

# TABLE OF CONTENTS

**Page**

GROUND FOR REVIEW ...............................................................i

IDENTITY OF PARTIES AND COUNSEL ........................................ ii

TABLE OF CONTENTS ........................................................iii-iv

INDEX OF AUTHORITIES ......................................................... v-vi

STATEMENT REGARDING ORAL ARGUMENT ...........................................1

STATEMENT OF THE CASE ...............................................................2

STATEMENT OF THE PROCEDURAL HISTORY ......................................... 2-4

GROUND FOR REVIEW ...............................................................4

The Court of Appeals erred in rejecting Winzer's *Batson* objection based on an erroneous belief that the Court of Criminal Appeals has disavowed its previous holdings in *Emerson* and *Whitsey*.

ARGUMENT ................................................................... 4-5

STANDARD OF REVIEW ...............................................................4

APPLICABLE LAW ........................................................ 4-8

    A.    Juror Long ................................................ 8-11

    B.    *Grant v. State* ........................................ 11-15

    C.    Juror Mitchell ........................................ 15-19

    D.    Juror Pickron ........................................ 19-21

CONCLUSION AND PRAYER ...............................................................21

CERTIFICATE OF SERVICE .................................................................22

CERTIFICATE OF COMPLIANCE ....................................................23

APPENDIX .........................................................................................24

# INDEX OF AUTHORITIES

**Cases**                                                                                                                    **Page**

*Batson v. Kentucky*, 476 U.S. 79 (1986) ........................................................2, 3, 4, 5

*Blackman v. State*, 414 S.W.3d 757 (Tex. Crim. App. 2013)......................5, 6, 7, 18

*Cooper v. State*, 791 S.W.2d 80 (Tex. Crim. App. 1990) ....................................19

*Emerson v. State*, 851 S.W.2d 269 (Tex. Crim. App. 1993)   4, 8, 10, 13, 15, 17. 21

*Grant v. State*, 325 S.W.3d 655 (Tex. Crim. App. 2010) ............................ 10, 11-13

*Johnson v. California*, 545 U.S. 162 (2005) ................................................................6

*Miller-El v. Dretke*, 545 U.S. 231 (2005)  .............................................................18

*Moeller v. Blanc*, 276 S.W.3d 656 (Tex. App. – Dallas, 2008, pet. ref'd.)...............6

*Musick v. State*, 862 S.W.2d 794 (Tex. App. – El Paso, 1993)  .............................9

*Purkett v. Elem*, 514 U.S. 765 (1995)........................................................................6, 18

*Shuffield v. State*, 189 S.W.3d 782 (Tex. Crim. App. 2006) .....................................6

*Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203 (2008).......................................5

*United States v. Williamson*, 533 F.3d 269 (5th Cir. 2008)  .....................................5

*Walker v. State*, 859 S.W.2d 566 (Tex. App. – Waco 1993, pet. ref'd)  ..................9

*Whitsey v. State*, 796 S.W.2d 707 (Tex. Crim. App. 1990)...........4, 9, 10, 11, 13, 19

*Williams v. State*, 804 S.W.2d 95 (Tex. Crim. App. 1991) .....................................5

*Winzer v. State*, No. 05-14-01079-CR, 2015 WL 4931418
(Tex. App. – Dallas, August 18, 2015)............................................................3, 11

## Codes and Rules

TEX. CODE. CRIM. PRO. ANN. art. 35.261 ........................................................3, 5, 6

TEX. PEN. CODE § 22.02(a)(2) ..............................................................................2

TEX. PEN. CODE § 22.01(b)(1) ..............................................................................2

TEX. R. APP. P. 66.3(c) ..........................................................................................5

## Constitutional Provisions

U.S. CONST. amend. XI ..........................................................................................3

U.S. CONST. amend. XIV ........................................................................................3

## Miscellaneous

Gilad Edelman, *Why is it so Easy for Prosecutors to Strike Black Jurors?*, The New Yorker, June 5, 2015 ......................................................................................14

Melissa Longamore, *Study Reveals Illegal Racial Discrimination in Jury Selection*, Marquette University Law School Faculty Blog, http://law.marquette.edu/facultyblog/2010/07/20/study-reveals-illegal-racial-discrimination-in-jury-selection/..........................................................................14

## STATEMENT REGARDING ORAL ARGUMENT

Winzer believes that oral argument will be helpful to this Court to resolve the issue raised because it is both fact intensive and raises an important question of law. The question of whether *Batson v. Kentucky* will be taken seriously in Texas is directly raised by this case and oral argument will help to reach a just resolution of this question.

## STATEMENT OF THE CASE

This case involved a group of white and Hispanic police officers who shot and killed Winzer's son.   As a result, Winzer, who was emotional and distraught, wound up in a struggle with these officers.   Winzer, who is African American, was ultimately tried by an all white jury.   The reason he was tried by an all white jury is that there were only three black jury veniremembers within the strike zone and the state used three of its ten peremptory strikes to strike these three potential jurors.

## STATEMENT OF THE PROCEDURAL HISTORY

On June 27, 2013, Winzer was charged by indictment with assault on a public servant. (CR: 125); *See* TEX. PEN. CODE § 22.01(b)(1). On February 21, 2014, a second indictment was filed charging Winzer with aggravated assault with a deadly weapon against a public servant. (CR: 8); *see* TEX. PEN. CODE § 22.02(a)(2). The state proceeded on the second indictment, Winzer pleaded not guilty, and a jury trial was held July 28, 2014 through July 30, 2014. (RR2: 9, RR3: 2).

On July 28, 2014, jury selection began. There were three African-American venire members on the jury panel. The State struck all three. At the conclusion of voir dire, after learning that the State has used three of their ten preemptory strikes to strike all of the potential African-American jurors, defense counsel made a *Batson* objection. (RR3: 208-09); *Batson v. Kentucky*, 476 U.S. 79, 89, 106 (1986).

The court held a *Batson* hearing. (RR3: 208-13). As to venire member Long, the State said she was struck because she was a teacher and teachers are "more sympathetic, generally speaking." (RR3: 209, 211). As to venire member Mitchell,

the State claimed she was struck because she "had issues with the police" and that they struck everyone who had issues with law enforcement. (RR3: 209, 211-12). Based on these explanations, the trial court overruled Winzer's *Batson* challenge and he proceed to trial with an all white jury. (RR3: 213)

On July 30, 2014, the jury found Winzer guilty of aggravated assault on a public servant. (RR5: 46). Following the verdict, pursuant to a plea agreement between Winzer and the State, the trial court sentenced Winzer to five years imprisonment in the Texas Department of Corrections. (RR5: 51). Winzer timely filed notice of appeal and a motion for new trial. (CR: 88, 93). In his motion for new trial, Winzer argued that the state violated *Batson,* as well as the Texas Code of Criminal Procedure, and the equal protection and due process clauses of the United States Constitution by exercising its preemptory strikes based on race. (CR: 93); *see Batson*, 476 U.S. at 89; Tex. Code Crim. Pro. Art. 35.261; U.S. Const. amend. XI, XIV. On September 29, 2014, the trial court held a hearing on Winzer's motion for new trial and the State re-urged the explanations provided during trial regarding the use of their preemptory strikes. (RR6: 1, 6-11). Later that same day, the court denied Winzer's motion without specific findings. (CR: 123).

On appeal, Winzer argued that the trial court clearly erred in denying his *Batson* challenges. *Winzer v. State*, No. 05-14-01079-CR, 2015 WL 4931418 (Tex. App. – Dallas, August 18, 2015). The Court of Appeals affirmed Winzer's conviction finding that the State provided adequate race-neutral explanations for

striking both venire member Long and Mitchell. *Id.* With regard to venire member Long, the Court of Appeals concluded that the State's reason "did not become impermissible because the State did not individually question Long." No motion for rehearing was filed.

## GROUND FOR REVIEW

**The Court of Appeals erred in rejecting Winzer's *Batson* objection based on an erroneous belief that the Court of Criminal Appeals has disavowed its previous holdings in *Emerson* and *Whitsey*.**

## ARGUMENT

This case demonstrates that, while progress has been made in the question of racial discrimination in jury selection, the practices that led to the issuance of *Batson v. Kentucky*[1] remain a part of our criminal justice system.

By affirming the trial court's denial of Winzer's *Batson* challenge, the Court of Appeals has divested *Batson* of its intended effect by affirming the use of pretextual explanations for peremptory strikes. The Court of Appeals apparently believes that this Court's earlier holdings in *Emerson v. State*, 851 S.W.2d 269, 273 (Tex. Crim. App. 1993) and *Whitsey v. State*, 796 S.W.2d 707 (Tex. Crim. App. 1990) have been overruled or disavowed by this Court. Therefore, the Court of Appeals affirmed the State's use of peremptory strikes in a manner previously held invalid by this Court. The Court of Appeals ruling is clearly incorrect if *Emerson*

---

1 *Batson v. Kentucky*, 476 U.S. 79 (1986).

and *Whitsey* are still good law. Thus, this Court should grant review to clarify whether the holdings in *Emerson* and *Whitsey* remain good law. TEX. R. APP. P. 66.3(c). If so, the State's exercise of their peremptory strikes violated Winzer's rights under *Batson* and the Texas Code of Criminal Procedure and this Court should reverse and remand Winzer's case for a new trial. TEX. CODE. CRIM. PRO. ANN. art. 35.261. If the Court of Appeals is correct, and this court's strong response to *Batson* in its cases from the 1990's are no longer operative, this should be clearly stated by the Court of Criminal Appeals.

## STANDARD OF REVIEW

On appeal, the resolution of a *Batson* issue is reviewed for clear error. *Williams v. State*, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). This Court should consider the voir dire record as a whole. *Blackman v. State*, 414 S.W.3d 757, 764-65 (Tex. Crim. App. 2013). While, great deference is afforded to a trial court's determination that a racially neutral explanation is genuine and not pretext, "the Supreme Court has made plain that appellate review of alleged *Batson* errors is not a hollow act." *Id*; *United States v. Williamson*, 533 F.3d 269, 274 (5th Cir. 2008) (applying clear error standard of review to a district court's *Batson* ruling) (citing *Snyder v. Louisiana*, 552 U.S. 472, 128 S.Ct. 1203, 1207 (2008)).

## APPLICABLE LAW

"The Equal Protection Clause forbids the prosecutor challenging potential jurors solely on account of their race." *Batson*, 476 U.S. at 89. Likewise, the Texas

Code of Criminal Procedure prohibits the use of preemptory challenges to exclude prospective jurors on the basis of race. TEX. CODE. CRIM. PRO. ANN. art. 35.261 (West 2006). "The exclusion of even one juror for prohibited reasons invalidates the entire-jury selection process, so a trial court's erroneous denial of a *Batson* challenge always requires a new trial." *Moeller v. Blanc*, 276 S.W.3d 656, 659 (Tex. App. – Dallas, 2008, pet. ref'd.).

When a *Batson* challenge is raised, a three-step process is employed to resolve the objection. *See Blackman v. State*, 414 S.W.3d 757, 764 (Tex. Crim. App. 2013). First, the party challenging the use of preemptory strikes must establish a *prima facie* case of racial discrimination. *Shuffield v. State*, 189 S.W.3d 782, 785 (Tex. Crim. App. 2006). Next, the proponent of the strike must offer a race-neutral explanation for the strike. *Id.* The first two steps of a *Batson* hearing are merely evidentiary and the proponent of the strike need only offer an explanation that is racially neutral on its face. *Johnson v. California*, 545 U.S. 162, 171 (2005); *see also Purkett v. Elem*, 514 U.S. 765, 767 (1995). In the third step of the *Batson* process, the court must then consider the plausibility of the explanation provided and decide whether the opponent of the strike has satisfied his burden of persuasion "to establish by a preponderance of the evidence that the strike was indeed the product of purposeful discrimination." *Blackman*, 414 S.W.3d at 764; *see also Purkett*, 514 U.S. at 768 ("It is not until the third step that the persuasiveness of the justification [for the preemptory strike] becomes relevant").

Therefore, whether a race-neutral explanation was merely pretextual is a question of fact for the court to consider in the third step of the *Batson* process. *Blackman*, 414 S.W.3d at 764. This Court has explained,

> "After a prosecutor gives nondiscriminatory reasons for striking prospective minority jurors from the venire, the trial judge must determine whether these facially neutral explanations are contrived to avoid admitted acts of discrimination. This must be done because a prosecutor, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror. The trial judge as supervisor of the voir dire is in a position to readily perceive discrepancies during the jury selection process. Evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within the province of the trial court. The trial judge may not, however, merely accept the specific reasons given by the prosecutor at face value. . .
> In *Keeton*, we presented a non-exclusive list of factors which tend to show that the reasons or explanations given by the prosecutor are merely sham or pretext. Presence of these factors also weighs against the legitimacy of a race-neutral explanation for the use of peremptory strikes. Additionally, this type of evidence tends to show that the State's reasons for using peremptory strikes are not actually supported by the record or are impermissible pretext. Such evidence may include, an explanation based on a group bias whether the group trait is not shown to apply to the challenged juror specifically." *Emerson v. State*, 851 S.W.2d 269, 273 (Tex. Crim. App. 1993). (internal citations omitted); *see also Whitsey v. State*, 796 S.W.2d 707 (Tex. Crim. App. 1989) (finding the prosecutor's race-neutral explanation, that venire member was a teacher and he believed teachers to be more liberal, impermissible where such a group trait was not shown to apply to the challenged juror).

The non-exhaustive list of factors to be considered in determining whether a prosecutor's reason for using peremptory strikes are impermissible pretext includes:

1. The reason given for the peremptory challenge is not related to the facts of the

case;

2.    There was a lack of questioning to the challenged juror or a lack of meaningful questions;

3.    Disparate treatment – persons with the same or similar characteristics as the challenged juror were not struck;

4.    Disparate examination of members of the venire

5.    An explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically. *Id.*

The trial court erroneously accepted the State's clearly pretextual "race-neutral" explanation for striking venire members Long, Mitchell, and Pickron denying Winzer's *Batson* objection, without making any specific findings on the record – at trial or in the court's denial of Winzer's motion for a new trial on the same grounds. The trial court's denial of Winzer's *Batson* challenge was clearly erroneous under applicable case law. Furthermore, the court of appeals evidenced a belief that holdings from "cases decided shortly after *Batson*" – *Emerson* and *Whitsey* – have been overruled.

**A.    Juror Long**

Here, with respect to venire member Long the State used, as an impermissible pretext, the fact that Long is a teacher and teachers are allegedly more sympathetic when there is nothing in the record to support the conclusion that the group trait applied to Long. *See Emerson*, 851 S.W.2d at 274 (occupation based explanation for

peremptory strike was not legitimate where the State applied a group bias without determining whether it applied to venire member specifically); *see also Whitsey*, 796 S.W.2d at 714-16 (finding the prosecutor's race-neutral explanation, that venire member was a teacher and he believed teachers to be more liberal, impermissible where such a group trait was not shown to apply to the challenged juror); *Musick v. State*, 862 S.W.2d 794, 802 (Tex. App. – El Paso, 1993) (it is not legitimate to apply an occupation-based, group bias to a prospective juror without inquiring whether the bias applies specifically to the venireperson and the trial court erred by accepting the purported rationales); *Walker v. State*, 859 S.W.2d 566, 570 (Tex. App. – Waco 1993, pet. ref'd) (noting that in *Emerson* the court held that a group bias not shown to apply to the stricken venire member was "insufficient as a matter of law to rebut appellant's prima facie showing of racial discrimination in the jury selection process") (Vance, J., dissenting).

A review of the record establishes that the State did not ask any questions of Long to determine whether the purported group trait – being sympathetic – applied to her and the record, in fact, supports the opposite conclusion.[2] The only communication with Long during voir dire occurred during a discussion about the range of punishment, when the State asked each juror individually if they could

---

[2] The Court of Appeals also noted that Winzer chose not to cross-examine the prosecutor concerning the reason for his strikes. Of course, once the prosecutor stated his reasons it was apparent that his reasons were violative of *Batson* and cross examination was unnecessary.

consider the entire range of punishment and Long responded, "Yes." (RR3: 68).

Neither the State nor the defense asked Long any specific questions nor did she offer

any additional information on any other topic during voir dire. (RR3: 29-208). The

State did not ask Long any questions regarding her sympathetic nature. *Id.* While a

lack-of-questioning by itself is not dispositive, it is a factor to be considered under

*Emerson* and *Whitsey*, both of which found that a group bias is an impermissible

pretext unless it is shown to apply to the stricken juror. *See Grant v. State*, 325

S.W.3d 655, 659 (Tex. Crim. App. 2010); *see Emerson*, 851 S.W.2d at 274; *see also*

*Whitsey*, 796 S.W.2d at 714-16.

Furthermore, the limited record available with regard to Long would

undermine the State's alleged explanation that she may be sympathetic. For

example, the State questioned the panel as a whole about sympathy asking,

> "[H]ow many of you all believe you have a very sensitive heart, you
> may have a problem applying the law to the facts? If you'll feel so
> sympathetic under a circumstance that you would not be able to follow
> the law even if you feel sorry for a person? Anybody just knows
> himself, very sensitive to those kinds of things." (RR3: 85).

Long did not identify herself as having a sensitive heart. (RR3: 85).

Furthermore, during the defense's voir dire, Long affirmed her ability to consider

the entire range of punishment, probation to 99 years, which belies the idea that she

is somehow particularly sensitive. (RR3: 119).

In *Whitsey,* this court held,

> "[T]he prosecutor's reasoning for striking one black female who

was a teacher was based on a group bias not shown to apply to the challenged juror. The prosecutor opined that this prospective juror was liberal because of her occupation. The prosecutor also stated that he struck another black female because he believed she was liberal because of her husband's occupation as a nurse's assistant. The prosecutor, however, did not ask any questions of either juror which he peremptorily challenged; not did these jurors respond to any questions by defense counsel. The record of voir dire is devoid of any testimony [sic] which indicates that these two black prospective jurors were "liberal" because of their occupations. This reason appears to be a class example of an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically." *Whitsey*, 796 S.W.2d at 716.

Likewise, in this case, the prosecutor allegedly struck Long because she was a teacher and he believed teachers to be sympathetic. (RR3: 209). However, there is nothing in the record to support the conclusion that Long is sympathetic. Rather, this is a "classic example of an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically." *Whitsey*, 796 S.W.2d at 716.

**B.**   ***Grant v. State***

In affirming the trial court's denial of Winzer's *Batson* challenge to Long, the Court of Appeals erroneously relied on *Grant v. State*, where this Court held that a lack-of-questioning is not dispositive, to implicitly find that a pretext based on a group trait not shown to apply to the stricken juror is permissible. *Grant*, 325 S.W.3d at 661. The Court of Appeals ignored precedent set by this Court in *Emerson* and *Whitsey. See Winzer v. State*, No. 05-14-01079-CR, 2015 WL 4931418 (Tex. App. – Dallas, August 18, 2015); *see also Grant v. State*, 325 S.W.3d 655, 659 (Tex. Crim.

App. 2010). The State argued and the Court of Appeals accepted that the application of a group bias is valid even in the absence of additional questioning, relying on the Court's holding in *Grant*. However, *Emerson,* and *Whitsey,* although decided shortly after *Batson*, are still good law to this day and hold the opposite.

The *Grant* case, relied upon by the Court of Appeals, is not applicable to this case because it did not concern the application of a group bias and is factually distinguishable. In *Grant,* following a *Batson* challenge, the State explained that it struck a prospective juror because he indicated that his wife worked for the same company as the defendant's girlfriend. *Grant*, 325 S.W.3d at 657. On appeal, the defendant complained that the State failed to conduct any further inquiry of the stricken venire member to see if any relationship between his wife and the defendant's girlfriend actually existed. *Id.* Reversing the Court of Appeals, this Court found that the Court of Appeals "should not have given dispositive weight to the lack-of-questioning factor [found in *Keeton* and *Whitsey*]." *I*d at 660-61.

However, this Court also declined to adopt "the State's more extreme proposition that basing reversal exclusively on a lack of questioning is wrong." *Id* at 660 (internal quotations omitted). Rather, this Court correctly found that, "[C]ategorically requiring more than the lack-of-questioning factor would be incompatible with *Keeton's* and *Whitsey's* characterization of the factors as nonexclusive illustrations of the types of evidence that can be considered – just as it would be inconsistent to allow the lack-of-questioning factor to be dispositive." *Id.*

The Court of Appeals in this case incorrectly considered the holding in *Grant* as an implicit overruling of earlier holdings in *Emerson* and *Whitsey*, which found that a prosecutor's use of a group bias as an explanation for striking a potential juror is illegitimate when that group trait was not shown to apply the potential juror. *See Emerson*, 851 S.W.2d at 274 (occupation based explanation for peremptory strike was not legitimate where the State applied a group bias without determining whether it applied to venire member specifically); *see also Whitsey*, 796 S.W.2d at 714-16 (finding the prosecutor's race-neutral explanation, that venire member was a teacher and he believed teachers to be more liberal, impermissible where such a group trait was not shown to apply to the challenged juror). In these cases, as with Winzer's *Batson* challenge to venire member Long, it is not the lack of questioning that is dispositive. Rather the lack of questioning is evidence, considered in connection with the illegitimate group bias explanation, which demonstrates an impermissible pretext. The Court of Appeals effectively ignored the group bias issue, presumably believing it to no longer stand as good law because "it was decided shortly after *Batson*."

If the Court of Appeals decision in this case is allowed to stand it effectively eviscerates earlier holdings in *Emerson* and *Whitsey* by erasing the group bias factor from consideration. The Court of Appeals entirely ignored this facet of Winzer's *Batson* challenge to Long, which implicates this Court's holdings in *Emerson* and *Whitsey*. Although these cases were "issued shortly after *Batson*" they continue to

represent good law that is necessary to ensure equal protection under the law. The State and Court of Appeals would have this Court treat *Batson* as out-of-date or unnecessary, but this case demonstrates the very real need for the continuing protection intended by *Batson* and its progeny.

The improper use of race in jury selection continues to be a very real problem in our judicial system. *See* Gilad Edelman, *Why is it so Easy for Prosecutors to Strike Black Jurors?*, The New Yorker, June 5, 2015. For example, a 2010 study conducted by the Equal Justice Initiative documented discrimination in jury selection in each of the eight states profiled for the study. *Id.* According to this study, "what trial judges accept as adequate race-neutral explanations is one of the core problems." Melissa Longamore, *Study Reveals Illegal Racial Discrimination in Jury Selection*, Marquette University Law School Faculty Blog, http://law.marquette.edu/facultyblog/2010/07/20/study-reveals-illegal-racial-discrimination-in-jury-selection/. This Court too, anticipated the potential for prosecutors to evade the true intent of *Batson*, noting:

> *"We do not believe, however, that Batson is satisfied by neutral explanations which are not more than facially legitimate, reasonably specific and clear. Were facially neutral explanations sufficient without more, Batson would be meaningless. It would take little effort for prosecutors who are of such a mind to adopt rote "neutral explanations" which bear facial legitimacy but conceal a discriminatory motive. We do not believe the Supreme Court intended a charade when it announced Batson." Keeton v. State*, 749 S.W.2d 861, 865 (Tex. Crim. App. 1988).

Here, the record establishes that the prosecutor's explanations for striking

every African-American venire member, while facially neutral, are wholly unsupported by the record.

## C. Juror Mitchell

With regard to venire member Mitchell, the State allegedly struck her because she had "issues with law enforcement." (RR3: 209). However, the trial court's acceptance of that explanation is clearly erroneous because it is unsupported by the record, which demonstrates that the State treated white venire members disparately with regard to negative law enforcement sentiments. *See Emerson*, 851 S.W.2d at 274 (finding a prosecutor's reasons pretextual and insufficient as a matter of law where the record reflects that the prosecutor did not strike white venire members with the same or similar characteristics relied upon in striking minority venire members). The State's unsupported strike of Mitchell and Pickron is further evidence of the true discriminatory intent of the State in striking every potential African-American juror in this case.

At the conclusion of voir dire, after the State announced its peremptory strikes, Winzer made a *Batson* objection based on the state's use of three of their ten peremptory strikes to strike all three African-American venire members. (RR3: 208-09). With regard to Mitchell, the prosecutor explained that he struck her because she "had issues with the police." (RR3: 209). That explanation is unsupported by the record. During the State's voir dire, the prosecutor asked the panel,

"[h]ow many of you all have had an issue with a peace officer? Like

you feel like a family member or yourself have been mistreated in any way by a peace officer. You feel like the criminal justice system didn't treat your friend, son, husband, yourself fairly related to your case or a close friend's case." (RR3: 74).

Mitchell responded "no." (RR3: 77). At the *Batson* hearing, Winzer informed the trial court that Mitchell, in fact, did not report any issues with law enforcement as the prosecutor stated. (RR3: 210).

The State then responded that Mitchell was actually struck because she believed that the system was unfair. (RR3: 210-211). During the State's voir dire, the prosecutor asked the panel, "[D]o any of you all feel like the criminal justice system is unfair to minorities, blacks, Hispanics?" (RR3: 81). Mitchell responded, "uh-ugh." (RR3: 82). Based on this, the State elected to bring Mitchell in for individual questioning following voir dire. (RR3: 174-75). The following exchanged occurred:

"THE COURT: You are one of several jurors who said that you thought our system might not always be fair, is that correct?

VENIREPERSON: Yes.

THE COURT: Let me just tell you that our system is not always fair. I think we would all agree on that.

VENIREPERSON: Right.

THE COURT: The fact that sometimes the train does go off track, can you put that aside in this case?

VENIREPERSON: Mm-hmm.

THE COURT: Consider only the evidence that you hear and see?

VENIREPERSON: That's right.

THE COURT: Follow my instructions, be fair and impartial. Can you do those things?

VENIREPERSON: Yes, sir.

THE COURT: Mr. Gibbs.

MR. GIBBS: So the fact you stated that the system was unfair, you won't factor that into this case at all?

VENIREPERSON: No.

MR. GIBBS: You feel like – have there been situations or personal experiences that make you believe that the system is not fair?

VENIREPERSON: Well, just not this system particularly. Stuff you see on TV. Just like that guy that killed four people, then the lady shot the gun.

MR. GIBBS: I haven't heard about that. Can you explain?

VENIREPERSON: About the guy that killed the four people in the car wreck, and he got probation. Then the lady shot the gun, she got 50 years, just stuff like that.

MR. GIBBS: Right. Is there something specific about the system that you feel is unfair?

VENIREPERSON: Oh, no. (RR3: 174-75).

This exchange establishes that Mitchell *did not* believe that the system was unfair and thus, the record does not support the prosecutor's explanation for the strike. *See Emerson*, 851 S.W.2d at 273 (on appellate review the inquiry is whether the trial judge's decision is supported by the record). It is not sufficient that the State

simply provide a facially race-neutral explanation for strikes challenged under *Batson*; rather the race-neutral explanation must be genuine and supported by the record. *See Purkett*, 514 U.S. at 768; *see also Blackman*, 414 S.W.3d at 764.

The court may not simply accept a prosecutor's reasons for challenged strikes at face value. *See Keeton*, 749 S.W.2d at 868. In determining whether a prosecutor's stated reasons are genuine or pretext, the court may also consider the disparate treatment of similar venire members not stricken. Here, the state stuck 100% of the African-American venire members. (RR3: 210). The prosecutor explained that he struck venire member Mitchell because either she "had law enforcement issues" or because she believed that the system was unfair, which is unsupported by the record. (RR3: 209-11).

Furthermore, two white venire members, Carr and Lowe, who ended up sitting on the jury, both stated that they had negative experiences with law enforcement. (RR3: 75, 76, 174, 177); *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step"). Although he did not wind up on the jury, the State did not strike another white venire member, Mr. Haney, who reported a bad experience with law enforcement. (RR3: 187, 210).

The prosecutor reasoned and the Court of Appeals accepted that Lowe and Carr were not similarly situated to Mitchell because they "had objectively more

benign interactions with police which they adequately explained." But again this ignores the fact that Mitchell did not report *any* negative experience with law enforcement. (RR3: 74, 77). In summary, the State's purported reasoning for striking Mitchell – and not striking potential white jurors Haney, Lowe and Carr – are not supported by the record. While, a trial court's determination that a purported reason is genuine and not pretext is viewed with "great deference," it is not impenetrable where the record as a whole shows it to be clearly erroneous. *See Whitsey*, 796 S.W.2d at 716 (finding that explanations for peremptory strikes against black venirepersons not supported by the record are insufficient and cannot be afforded such deference).

**D.  Juror Pickron**

Finally, both the defense and the State struck juror Pickron. (RR3: 208). However, the State's reasoning for striking Pickron is not supported by the record, which shows disparate treatment of venire members.   Most importantly, this strike shows the State's discriminatory intent and goal of having an all white jury.[3] *See Cooper v. State*, 791 S.W.2d 80, 84 n.2 (Tex. Crim. App. 1990) ("We note, however, that simply because the defense exercised a peremptory challenge against the same veniremember does not wholly refute the inference of discriminatory use of other peremptory challenges").

---

[3] Juror Pickron was a detention officer at the Dallas County Jail.   This is the reason Winzer struck this juror.   The fact that the state also struck this juror clearly demonstrates the state's intent to ensure Winzer was tried by an all white jury.

As with Mitchell, the prosecutor explained that he struck Pickron because she "had issues with the police." (RR3: 209). However, during voir dire, the State asked the panel,

> "[h]ow many of you all have had an issue with a peace officer? Like you feel like a family member or yourself have been mistreated in any way by a peace officer. You feel like the criminal justice system didn't treat your friend, son, husband, yourself fairly related to your case or a close friend's case." (RR3: 74).

Pickron, like Mitchell, responded "no." (RR3: 77). Pickron agreed that the system can be unfair to minorities but confirmed that she would be fair and impartial. (RR3: 82, 172). In fact, upon questioning from defense counsel Pickron stated, "Not that I – it's not that I think the system is unfair. I think it doesn't play out at times." (RR3: 123). Yet the state did not strike three white venire members who actually did report negative experiences with law enforcement. In fact, venire member Lowe, who actually ended up sitting on the jury, reported "[M]y brothers had some run-ins with the law, makes me uncomfortable around police officers really." (RR3: 179). Upon further questioning, from the prosecutor, regarding her distrust for law enforcement when asked, "So if you had to listen to a police officer testify, would it be difficult to maybe trust that police officer," Lowe responded "Maybe a little bit, yes." (RR3: 179). She further stated that her distrust of law enforcement was potentially a problem. (RR3: 180). It is hard to reconcile the State's explanation for striking Mitchell and Pickron, neither of whom reported problems with law enforcement (as the State attempted to represent they did), with the fact that Lowe,

a white venireman, sat on the jury. Therefore, as with Mitchell, the State's explanation with regard to striking Pickron is unsupported by the record. *See Emerson*, 851 S.W.2d at 274 (finding explanations for challenged strike insufficient as a matter of law where classification used by the State to eliminate a prospective juror was not uniformly applied to the non-black veniremembers).

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Winzer prays that this Court grant this petition for discretionary review, reverse the Court of Appeals' opinion and reverse the judgment of conviction and remand this cause for a new trial.

Respectfully submitted,

/s/ Gary A. Udashen
GARY A. UDASHEN
Bar Card No. 20369590
gau@sualaw.com

TIFFANY ALEX TALAMANTEZ
STATE BAR NO. 24079894
tiffany@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
214-468-8100
214-468-8104 (fax)

Attorneys for Appellant

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review electronically served to the Dallas County District Attorney's Office and the State Prosecuting Attorney on October 19, 2015.

       /s/ Gary A. Udashen
       GARY A. UDASHEN

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to TEX. R. APP. P. 9.4(I)(3), undersigned counsel certifies that this brief complies with:

1.  the type-volume limitation of TEX. R. APP. P. 9.4(I)(2)(D) because this petition contains 4,408 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(I)(1).

2.  The typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Times New roman.

    /s/ Gary A. Udashen                
GARY A. UDASHEN

**APPENDIX**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-01079-CR

**HENRY ANDRE WINZER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 14-00334-422-F**

## MEMORANDUM OPINION
Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Appellant Henry Andre Winzer was convicted by a jury of aggravated assault with a deadly weapon against a peace officer. In accordance with an agreement between appellant and the State as to punishment, the trial court sentenced appellant to five years in prison. On appeal, appellant argues that the trial court erred by denying his *Batson* challenge. Because the issues are settled, we issue this memorandum opinion. TEX. R. APP. P. 47.4. We affirm.

### BACKGROUND

The police responded to multiple reports that appellant's adult son was walking up and down the street behaving erratically and possibly waving a gun. When the police arrived near appellant's house, his son fired a gun at them. Police returned fire and hit his son. His son

retreated to the back yard and the police followed him. There they found appellant trying to help his son onto the porch. Both men resisted arrest and appellant bit one of the officers while they were struggling to arrest him. Appellant's son died at the scene from gunshot wounds.

This is an appeal from appellant's conviction for aggravated assault with a deadly weapon against a peace officer.

## ISSUE ON APPEAL

In his sole issue on appeal, appellant argues that the trial court erred when it denied his *Batson* challenge to the State's strikes of "all three potential black jurors." Appellant argues that the State's explanations for its strikes were a pretext for racial discrimination.

## Applicable Law and Standard of Review

The Texas Code of Criminal Procedure prohibits the use of peremptory challenges to exclude prospective jurors on the basis of race. TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006). Additionally, striking a prospective juror on the basis of race violates the equal protection guarantees of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986).

Resolution of a *Batson* challenge raised by a defendant is a three-step process:

First, the defendant must make a *prima facie* case that a venire member was peremptorily excluded on the basis of race. Next, the prosecution must come forward with race-neutral reasons for the peremptory strike. Finally, the defendant has the opportunity to rebut the State's explanations. The burden of persuasion remains with the defendant to prove purposeful discrimination. In *Purkett v. Elem,* the United States Supreme Court explained that "unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Shuffield v. State,* 189 S.W.3d 782, 785 (Tex. Crim. App. 2006) (footnotes omitted); *see Blackman v. State*, 414 S.W.3d 757, 764–65 (Tex. Crim. App. 2013) (articulating three steps and noting opponent of strike has "burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of purposeful discrimination"). On appeal, we examine a trial court's conclusion that a racially neutral explanation is genuine, and not a pretext,

–2–

with great deference, and reverse only when that conclusion is, in view of the voir dire record as a whole, clearly erroneous. *Blackman*, 414 S.W.3d at 765.

## Analysis

Appellant's *Batson* challenge related to potential jurors Long, Mitchell, and Pickron.[1] After appellant's counsel stated his *Batson* challenge, the State explained the reasons for its strikes as follows:

> If you'll note that Long is a teacher. The State also struck Hacker, who is also a teacher. We struck Ms. Kennedy, who is also a teacher. Ms. Trosper was a teacher, but—well, she is a teacher, but she was stricken for cause. The rest of them, your Honor, were those who had issues with the police. That would include Ms. Pickron or Ms. Mitchell. I think [appellant also] struck Ms. Pickron. . . . So we struck all teachers, and we struck everyone who had law enforcement issues. And it just so happened that two were African American on the law enforcement side, and one was a teacher on the African American side.

In response, appellant's counsel (1) acknowledged that he also struck Pickron, (2) disputed that Mitchell said she had problems with law enforcement, and (3) argued that striking Long because she was a teacher is not a legitimate, race-neutral explanation.

> The prosecutor again explained that the State struck all teachers, regardless of race:

> Your Honor, just for record purposes, I want it to be noted Ms. Long, that's duly noted she was a teacher. We struck three white teachers as well. Teachers have long been an issue for the district attorney's office in Kaufman. They're more sympathetic, generally speaking. In this case in particular the State went into it knowing they did not want teachers or persons who were sympathetic because this is a very sympathy oriented case.

> With respect to Mitchell, the prosecutor explained that the State struck everyone who said they thought the system was unfair or who said they had a bad experience with the police, regardless of race, except for two jurors who had personal relationships with police officers:

> As relates to Ms. Mitchell, I believe that the defense is stating that she did not indicate that she thought that the system was unfair.

---

[1] Appellant argues that the strike of a third potential juror, Pickron, demonstrates the State's pattern of eliminating African-American jurors and not that the strike itself violated *Batson*.

Judge, I'd like the Court to know and the record to reflect that she was called up to the bench for that exact purpose. She stated that she felt like the system was unfair. Not only did we use a peremptory strike on her, but we also used one on Holloman [sic] who said that the system could not be fair, even though he came—approached, said that he felt like he could be fair. We also used one on Goble, who said she felt like the criminal justice system could not be fair. She came to the bench, said she felt like she could be fair; but we still struck her. I could continue with the entire list.

Every person that said that they had a bad experience with a police officer, we struck them, with the exception of two persons. And that would be Mr. Carr [sic], because when he came up he indicated not only could he be fair, but he had police officers that were currently his friends. Ms. Haney or Mr. Haney noted that same thing, that not only could he be fair, but that was 15 years prior, and that he had one of his best friends that was in his wedding was a peace officer. So the State felt comfortable with keeping those two persons.

Appellant's counsel did not question the prosecutor or introduce evidence to rebut the State's explanations but stated that, as a result of the State's strikes, there would be no African-American jurors. Appellant's counsel asked the trial court to "disallow the strike of 20 [Long] and 25 [Mitchell]."[2]

**Venire Member Long**

Appellant argues that the State's explanation that it struck Long because she was a teacher was pretextual. Appellant contends that the only communication with Long during voir dire was when she responded "yes" when asked if she could consider the full range of punishment. He argues that her answer to that question "belies the idea that she [was] somehow particularly sensitive." He contends that, under *Keeton v. State*, 749 S.W.2d 861, 868 (Tex. Crim. App. 1988), *Whitsey v. State*, 796 S.W.2d 707, 713–15 (Tex. Crim. App. 1989), and *Emerson v. State*, 851 S.W.2d 269, 273 (Tex. Crim. App. 1993), the State's race-neutral explanation—that she was a teacher and the State viewed teachers as more sympathetic and, as a

---

[2] Although appellant's counsel filed a motion to supplement the appellate record to include the juror information sheets and information on peremptory strikes, in oral argument, appellant's counsel stated that "the juror information cards in Kaufman [County] give us no information" and conceded that he did not think that there would be any information in the juror information sheets that would be helpful in the disposition of this case.

–4–

result, struck all teachers—was impermissible and pretextual because the group trait "was not shown to apply to Long specifically." Appellant argues that *Keeton*, *Whitsey*, and *Emerson* require the State to question venire member Long individually to determine whether the alleged group bias—the sympathetic nature of teachers—applied to her.

The State contends that its explanation for striking venire member Long was race neutral, and that appellant did not rebut the prosecutor's explanation that Long was struck along with all other teachers from the panel.[3] We agree.

The State's reason that it excluded all teachers from the venire panel is race neutral. *See Williams v. State*, 939 S.W.2d 703, 706 (Tex. App.—Eastland 1997, no pet.); *see also Rhoades v. State*, 934 S.W.2d 113, 124 (Tex. Crim. App. 1996) (race-neutral reasons included that prospective juror "was an elementary school teacher and might identify too closely with evidence of appellant's difficult childhood"). Appellant did not offer any evidence in rebuttal to the State's race-neutral reason for striking Long. Instead, appellant's only response was: "I don't think striking a juror because they're a teacher is a legitimate, race neutral explanation; and I would contend that that's a pretext for a strike for a juror based upon racial reasons."

The court of criminal appeals in *Grant v. State*, 325 S.W.3d 655, 659 (Tex. Crim. App. 2010), described *Keeton*, *Whitsey*, and *Emerson*, cases relied on by appellant, as cases issued shortly after *Batson* was decided that "suggested a number of factors that could be considered in the third step of a *Batson* challenge." But in reversing the court of appeals's decision and concluding the trial court did not clearly err in denying the *Batson* challenge, the *Grant* court stated that the court of appeals "should have given deference to the trial court's evaluation of the prosecutor's credibility and should not have given dispositive weight to the lack-of-questioning

---

[3] Given our disposition of appellant's issue, it is not necessary for us to address the State's argument that appellant did not present an adequate record to this Court.

factor." *Id.*at 661; *see Nieto v. State*, 365 S.W.3d 673, 678 (Tex. Crim. App. 2012); *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992) (concluding that the prosecutor's stated reasons for strikes "are not rendered racially impermissible simply because he did not" individually "question[] all of the stricken venirepersons"); *Walker v. State*, 859 S.W.2d 566, 568 (Tex. App.—Waco 1993, pet. ref'd) (concluding prosecutor's non-discriminatory reasons for strike were not impermissible simply because he did not individually question the stricken venire members).

We conclude that the State's non-discriminatory reason did not become impermissible because the State did not individually question Long. And we also conclude that the trial court did not err in denying appellant's *Batson* challenge concerning Long. *See, e.g., Chamberlain v. State*, 998 S.W.2d 230, 236 (Tex. Crim. App. 1999); *Satterwhite v. State*, 858 S.W.2d 412, 424 (Tex. Crim. App. 1993) (holding appellant failed to carry his burden of showing racial discrimination because appellant did not cross-examine the prosecutor or offer any evidence to rebut prosecutor's race-neutral explanations); *see also Crew v. State*, No. 05-08-00959-CR, 2009 WL 2712386, at *4 (Tex. App.—Dallas Aug. 31, 2009, pet. ref'd) (mem. op., not designated for publication) ("Once the State provided its race-neutral explanation for the strike, appellant made no further argument against the explanation such as questioning the prosecutor or offering his own evidence of impermissible motive. Thus, on the record before us we cannot say the trial court's decision to overrule appellant's *Batson* challenge was clearly erroneous.") (internal citation omitted); *Daniels v. State*, No. 05-06-01363-CR, 2008 WL 444467, at *5 (Tex. App.—Dallas Feb. 20, 2008, pet. ref'd) (mem. op., not designated for publication) (concluding trial court's ruling denying *Batson* challenge was not clearly erroneous because, "[b]y failing to challenge any of the State's race-neutral reasons for striking the jurors, appellant did not meet his burden of showing the State's explanations were pretextual").

**Venire Member Mitchell**

During voir dire, Mitchell responded to the question of whether she felt "like the criminal justice system is unfair to minorities" with "Uh-ugh" and later stated "Yes" when asked if she thought that the system was unfair. Mitchell stated "[n]o" when asked if she or a friend had a bad experience with a police officer. When questioned individually, Mitchell confirmed that she thought "our system might not always be fair" but, in answer to the court, stated that she could "put that aside in this case" and be fair and impartial. She also stated that she saw instances of unfairness on television.

During the *Batson* hearing, the prosecutor stated that he struck Mitchell because she "had issues with the police" and she stated that the justice system was unfair. He said that the State struck all venire members who had law enforcement issues, with the exception of two jurors who had personal relationships with police officers. Defense counsel contended that he did not believe Mitchell "said she had any problems with law enforcement." He noted that, during the general voir dire, Mitchell stated the "system can be unfair at times" but then, in her individual questioning, she "made it perfectly clear" that "she was not saying the system is always unfair" but acknowledged that the system is not fair and correct in every case. Defense counsel said that the State was not accurately stating what Mitchell said and asked the court to disallow the State's strike of Mitchell.

On appeal, appellant argues that the State's reason, that Mitchell had "issues with the police" or "law enforcement issues[,]" is not supported by the record. And appellant argues that striking Mitchell because she stated that the legal system was unfair "cannot be said to be race neutral in light of the record" because her answers during individual questioning reflected that she did not believe that the system was unfair, or at least not any more unfair than the court acknowledged. And appellant contends that he "notified the trial court at the *Batson* hearing that

–7–

the State was misrepresenting Mitchell's testimony." The State argues that the record "amply supports" the prosecutor's concern that Mitchell had "law[ ]enforcement issues" and that defense counsel did not rebut the State's statement that the prosecutor struck every venire member "who expressed the same negativity about the justice system or police who was not adequately rehabilitated[.]"

The State's reason that it excluded Mitchell from the jury panel is race neutral. *See Pondexter v. State*, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996) (explanation that venire member believed criminal justice is fair "sometimes" was a race-neutral reason). As we noted, Mitchell stated during voir dire that she thought the justice system was unfair. Although Mitchell indicated during her individual questioning that she thought that she could be fair, the prosecutor could have reasonably concluded that her earlier statement that the system was unfair could result in a bias against returning a conviction. *See Spears v. State*, 902 S.W.2d 512, 517–19, 522 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (concluding that trial court did not clearly err in determining prosecutor's strikes were not racially motivated when prosecutor could reasonably conclude that a venire member "had indicated an unwillingness to convict and had then changed her answer" during individual questioning and that another venire member would be reluctant to find someone guilty "[a]lthough she indicated upon further questioning she thought she could be fair to the State"); *Green v. State*, 839 S.W.2d 935, 939 (Tex. App.—Waco 1992, pet. ref'd); *see also Vargas v. State*, No. 05-96-01589-CR, 1999 WL 436848, at *5 (Tex. App.—Dallas June 30, 1999, pet. ref'd) (not designated for publication) ("That [venire member] eventually stated she would not let her feelings interfere with her verdict does not mean the State has to accept her wavering answers.").

Appellant also argues that the State did not strike two additional white jurors—Carr and Lowe—who testified that they had negative personal encounters with law enforcement.[4] In response, the State contends that jurors Carr and Lowe were not similarly situated to Mitchell because they "had objectively more benign interactions with police which they adequately explained" and neither stated "that they believed the system is unfair in general."

Disparate treatment is a factor we consider to determine whether the State's facially race-neutral explanation is a pretext for discrimination. *See Johnson v. State*, 959 S.W.2d 284, 292 (Tex. App.—Dallas 1997, pet. ref'd). In this case, appellant contends that the State struck minority prospective jurors who gave answers similar to nonminority prospective jurors the State did not strike. "We cannot, however, automatically impute disparate treatment in every case in which a reason for striking a minority venireperson also technically applies to a non-minority venireperson whom the prosecutor found acceptable." *Leadon v. State*, 332 S.W.3d 600, 612 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992). It "is unlikely that two venirepersons on one panel will possess the same objectionable attribute or character trait in precisely the same degree." *Cantu*, 842 S.W.2d at 689. Such differences may properly cause the State to challenge one potential juror and not another. *Id.*; *Leadon*, 332 S.W.3d at 612.

During voir dire, Carr indicated that she or a family member had been mistreated by a peace officer, but she stated to defense counsel that the experience would not affect how she viewed the case and that she could be fair. When questioned individually, Carr stated that the negative experience involved a police raid of a relative's home in connection with her nephew's drug conviction. Carr confirmed that she would be able to listen to and consider evidence from

[4] Appellant refers to the State's claimed "improper closing arguments related to race" to demonstrate "even more clear[ly]" that the State's justifications for the challenged strikes were not race neutral. But *Blackman*, 414 S.W.3d at 765, refers to review of the entire voir dire record, not to closing arguments, on review of a *Batson* challenge.

police "'cause [her] son was a sheriff's deputy." Defense counsel asked her, "So you have no problem with the police?" And she answered, "No, sir." When Lowe was asked if she had a bad experience with police, she answered, "I'll call it a maybe. I mean I wasn't happy." When asked individually if she had a bad police experience, she responded, "Not really[,]" and explained that two female police officers responding to a disturbance call had been "really rude" to her. She stated that it would not affect the way she feels about police and that she had "no disrespect for law enforcement whatsoever."

We conclude that the trial court did not err in denying appellant's *Batson* challenge concerning Mitchell.

**Venire Member Pickron**

Both the prosecution and defense struck venire member Pickron. During oral argument, appellant stated he did not "suggest" the double strike of Pickron "as a ground to reverse" but contended that he pointed out the strike of Pickron as "the pattern to show the purposeful discrimination, the purposeful intent to remove all of the black jurors." He stated that "it is the other two"—Long and Mitchell—that appellant believed "are the basis of the reversal."

Based on our conclusion that the trial court's ruling denying appellant's *Batson* challenge concerning Long and Mitchell was not clearly erroneous and the fact that both sides struck Pickron and that appellant conceded that the strike of Pickron is not a ground to reverse, we conclude that the State's strike of Pickron was harmless and does not apply to a *Batson* claim. *See, e.g., Robinson v. State*, No. 01-89-00589-CR, 1990 WL 177270, at *3 (Tex. App.—Houston [1st Dist.] Nov. 15, 1990, pet. ref'd) (not designated for publication) ("Appellant's use of his own peremptory challenge to strike the same venireperson renders the State's use of a peremptory challenge harmless and inapplicable to a Batson claim.").

We conclude that the trial court's ruling denying appellant's *Batson* challenge was not clearly erroneous. We resolve appellant's sole issue against him.

**CONCLUSION**

We affirm the trial court's judgment.


/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

141079F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HENRY ANDRE WINZER, Appellant

No. 05-14-01079-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 14-00334-422-F.
Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of August, 2015.